[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10713
Non-Argument Calendar
_____

D.C. Docket No. 7:16-cr-00003-HL-TQL-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

LEDELL L. ELLIS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(June 13, 2018)

Before TJOFLAT, NEWSOM and HULL, Circuit Judges.

PER CURIAM:

After pleading guilty to possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), defendant Ledell Ellis appeals his 71-month sentence. Ellis argues that the district court erred in categorizing his prior Georgia conviction for party to the crime of aggravated assault as a "crime of violence" under the Sentencing Guidelines. In response, the government contends Ellis's conviction qualifies and that the district court did not err. To understand the issues requires a complete review of both the procedural background and our relevant precedent.

## I.  BACKGROUND

On October 17, 2015, two officers of the Quitman, Georgia Police Department conducted a traffic stop on a gray Dodge Neon after noticing that the driver was not wearing a seatbelt. As one of the officers approached the vehicle, he noticed that the person sitting in the passenger seat—later identified as defendant Ellis—was holding a white towel over his lap. The officer then heard Ellis drop something on the vehicle's floorboard. Upon inspection, the officers discovered that the dropped object was a firearm. The officers removed both the driver and Ellis from the vehicle and secured the firearm in question—a Glock, Model 26, 9mm semiautomatic pistol with an extended magazine containing 33 rounds of ammunition.

2

On February 10, 2016, a federal grand jury returned an indictment charging Ellis with a single count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. 922(g) and 18 U.S.C. 924(a)(2).  Ellis pled guilty to the single count on October 12, 2016.

Using the 2016 Sentencing Guidelines, Ellis's Presentence Report ("PSR")[1] calculated his total offense level to be 21, consisting of: (1) a base offense level of 22 under U.S.S.G. § 2K2.1(a)(3) because the firearm was capable of accepting a large capacity magazine and because Ellis had previously been convicted of a crime of violence; (2) a two-level increase under § 2K2.1(b)(4)(A) because the firearm was stolen; (3) a two-level decrease for acceptance of responsibility under § 3E1.1(a); and (4) a one-level decrease for entering a plea of guilty in a timely manner under § 3E1.1(b).

As to the § 2K2.1(a)(3) base offense level, the PSR identified as the crime of violence Ellis's 2011 conviction in Glynn County, Georgia for party to the crime of aggravated assault, Docket No. CR1100383-063.  As to this conviction, the criminal history portion of the PSR stated that Ellis and a codefendant were indicted on thirteen counts and that Ellis pled guilty to one count of aggravated assault and one count of burglary, and the remaining counts were nolle prossed. The PSR further stated that "[w]ith respect to the counts of conviction, court

_____

[1]Ellis's initial PSR was revised twice.  Here, we recount the calculations set forth in the third and final PSR, because that is what the district court used in sentencing Ellis.

records show Ellis assaulted Barry Pierre with a handgun and entered the dwelling house of Frederick Stanley, all on August 18, 2010."

The PSR calculated Ellis's criminal history points to be nine, yielding a criminal history category of IV. This resulted in an advisory guidelines range of 57 to 71 months' imprisonment.

At his January 2017 sentencing hearing, Ellis objected to his base offense level of 22. Ellis contended, inter alia, that his prior Georgia conviction for party to the crime of aggravated assault could not qualify as a "crime of violence" as defined in U.S.S.G. § 4B1.2. Ellis did not dispute that Georgia aggravated assault constituted a crime of violence. Instead, Ellis argued that, under the categorical approach, Georgia's party to a crime statute—O.C.G.A. § 16-2-20—criminalizes conduct that falls outside of U.S.S.G. § 4B1.2's definition of a crime of violence. Specifically, Ellis argued that a defendant can be convicted under Georgia's party to a crime statute for "advis[ing], encourag[ing], or counsel[ing]" another to commit aggravated assault and that such conduct falls outside the definition of a crime of violence. Ellis argued that O.C.G.A. § 16-2-20 was a divisible statute, but that the state court indictment and plea suggested that Ellis's codefendant in the state case was the one who shot the victim and did not show how Ellis was a "party to" the aggravated assault under OCGA § 16-2-20.[2]

---

[2]As discussed later, a problem here is that at sentencing the parties and the district court

4

The district court overruled Ellis's objection, calculated Ellis's advisory guidelines range of 57 to 71 months using a base offense level of 22, and sentenced Ellis to 71 months of imprisonment.

## II.  DISCUSSION

On appeal, Ellis advances two arguments.  First, Ellis argues that Georgia aggravated assault is not a crime of violence under § 4B1.2 of the Sentencing Guidelines.  Ellis did not raise this argument during his sentencing hearing.[3] Second, Ellis repeats the argument he made at his sentencing hearing: that his Georgia aggravated assault conviction does not qualify as a crime of violence because it was for being a party to the crime.[4]

Under the Sentencing Guidelines, a defendant's base offense level is 22 if his firearm offense involved a semiautomatic firearm that was capable of accepting a large capacity magazine and he committed the firearm offense after sustaining a

---

discussed and referred to the contents of several state court documents, including the indictment and some plea records, but those documents were not formally admitted into evidence.

[3]We review this issue for plain error because Ellis did not raise it during his sentencing hearing.  See United States v. Massey, 443 F.3d 814, 819 (11th Cir. 2006) (holding that specific objections to a sentence must be clearly raised before the district court in order to be properly preserved for appeal, and that a defendant "fails to preserve a legal issue for appeal if the factual predicates of an objection are included in the sentencing record, but were presented to the district court under a different legal theory").  Moreover, as explained below, this claim also fails under a de novo standard of review because of this Court's decision in United States v. Morales-Alonso, 878 F.3d 1311 (11th Cir. 2018).

[4]We review this issue de novo because Ellis raised the argument during his sentencing hearing.  United States v. Lockley, 632 F.3d 1238, 1240 (11th Cir. 2011).

felony conviction for a crime of violence or controlled substance offense.  U.S.S.G. § 2K2.1(a)(3).  Section 4B1.2, in turn, defines "crime of violence" as any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that

> (1)    has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2)    is murder, voluntary manslaughter, kidnapping, <u>aggravated assault</u>, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a) (emphasis added).[5]  The first prong of this definition is commonly referred to as the elements clause, while the second prong is a list of enumerated crimes ("enumerated crimes clause").  See <u>United States v. Lockley</u>, 632 F.3d 1238, 1240-41 (11th Cir. 2011).

Application Note 1 of the commentary to § 4B1.2 explains that a crime of violence or a controlled substance offense "include[s] the offenses of aiding and abetting, conspiring, and attempting to commit such offenses."  U.S.S.G. § 4B1.2 cmt. n.1.  This list of inchoate offenses in the commentary "is not exhaustive" and "is not necessarily limited to aiding and abetting, conspiring, and attempting." <u>United States v. Lange</u>, 862 F.3d 1290, 1294-96 (11th Cir. 2017) (concluding that

---

[5]Effective August 1, 2016, Amendment 798 to the Sentencing Guidelines eliminated the residual clause in § 4B1.2(a)(2).  <u>See</u> U.S.S.G. app. C, amend. 798.

the definition of controlled substance offense "as informed by Application Note 1, is broad enough to encompass" principle liability under Florida law, which makes liable as a principle one who "aides, abets, counsels, hires, or otherwise procures" an offense that is committed or attempted to be committed).

To determine whether a state crime categorically qualifies as a crime of violence under the enumerated crimes clause, we apply the categorical approach. See Mathis v. United States, 579 U.S. ___, ___, 136 S. Ct. 2243, 2248 (2016). Under the categorical approach, we assess whether the elements of the crime of conviction sufficiently match the elements of any generic offense listed in the enumerated crimes clause. Id. In doing so, we look at how the state statute of conviction defines the offense at issue rather than looking at the conduct underlying the defendant's conviction. See Welch v. United States, 578 U.S. ___, ___, 136 S. Ct. 1257, 1262 (2016) ("Under the categorical approach, a court assesses whether a crime qualifies as a violent felony in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." (internal quotation marks omitted)). When applying the categorical approach, a court must presume that a conviction rested upon nothing more than the least of the acts criminalized. Moncrieffe v. Holder, 569 U.S. 184, 190-91, 133 S. Ct. 1678, 1684 (2013).

7

In certain cases, however, we apply a modified version of the categorical approach that allows us to look at "a limited class of documents to determine what crime, with what elements, a defendant was convicted of" in order to "compare that crime, as the categorical approach commands, with the relevant generic offense." Mathis, 579 U.S. at ___, 136 S. Ct. at 2249. It is appropriate to apply the modified categorical approach only when the statute of conviction is "divisible" in that it "list[s] elements in the alternative, and thereby define[s] multiple crimes." Id. A statute that merely lists alternative means of committing a single crime is not divisible, however. Id.

## A. Georgia Aggravated Assault

Ellis's first argument—that Georgia aggravated assault is not a crime of violence as defined by § 4B1.2 of the Sentencing Guidelines—fails in light of this Court's recent decision in United States v. Morales-Alonso, 878 F.3d 1311 (11th Cir. 2018).

Morales-Alonso concerned a defendant's challenge to a 16-level enhancement under § 2L1.2(b)(1)(A)(ii) of the 2015 Sentencing Guidelines. Id. at 1312-13. That enhancement applies to a defendant who has been previously deported after being convicted of a felony "crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii). The commentary to § 2L1.2 defined the term "crime of violence" to mean:

8

> [A]ny of the following offenses under federal, state, or local law: murder, manslaughter, kidnapping, <u>aggravated assault</u>, forcible sex offenses . . . , statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (2015) (emphasis added).[6]

Because Morales-Alonso had been convicted of Georgia aggravated assault prior to an earlier deportation, the district court applied the enhancement.  Morales-Alonso, 878 F.3d at 1313.  On appeal, Morales-Alonso argued that Georgia aggravated assault did not qualify as a "crime of violence," but this Court disagreed.  Id. at 1317-20.

This Court first recited the definition of generic aggravated assault: "a criminal assault accompanied by the aggravating factors of either the intent to cause serious bodily injury to the victim or the use of a deadly weapon."  Id. at 1315 (quoting United States v. Palomino Garcia, 606 F.3d 1317, 1332 (11th Cir. 2010)) (emphasis omitted).  This Court then turned to Georgia's aggravated assault statute, which at the time of Morales-Alonso's conviction defined "aggravated assault" as an assault committed:

(1)    With intent to murder, to rape, or to rob;

---

[6]In 2016, the Sentencing Commission amended § 2L1.2, and a revised version of the crime-of-violence definition for § 2L1.2 now appears in note 2 of the commentary.  See U.S.S.G. app. C, amend. 802.  The revised definition also lists aggravated assault as an enumerated offense.  See U.S.S.G. § 2L1.2 cmt. n.2.

(2)    With a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury; or

(3)    [Against a] person or persons without legal justification by discharging a firearm from within a motor vehicle toward a person or persons.

O.C.G.A. § 16-5-21(a) (2012).

This Court held that the Georgia aggravated assault statute was divisible. Morales-Alonso, 878 F.3d at 1316.  Using the modified categorical approach, this Court looked to available documents—known as Shepard[7] documents—to determine that Morales-Alonso was convicted of violating O.C.G.A. § 16-5-21(a)(2) because he assaulted his victim by throwing a brick at and striking the victim.  Id. at 1316–17.

This Court then compared the elements of subsection (a)(2) with generic aggravated assault, holding that that subsection (a)(2) contains substantially the same elements as generic aggravated assault.  Id. at 1317-19.  Morales-Alonso argued that subsection (a)(2) was broader than the definition of generic aggravated assault because subsection (a)(2) criminalized assaults committed with "object[s], device[s], or instrument[s]," whereas the generic definition of aggravated assault only concerned assaults committed with deadly weapons.  Id. at 1319-20.  But this Court rejected that argument, finding that Georgia law defined subsection (a)(2) as

---

[7]Shepard v. United States, 544 U.S. 13, 125 S. Ct. 1254 (2005).

requiring the use of a deadly weapon, which includes the use of "object[s], device[s], or instrument[s]" that are not per se deadly, but are deadly because of the manner in which they are used.  Id.  This meant that an aggravated assault under subsection (a)(2) counts as generic aggravated assault because it requires (1) an assault (2) that is committed either with a per se deadly weapon or with an "object, device, or instrument" that constitutes a deadly weapon because of the manner in which it is used in a particular case.  Id.

Though Morales-Alonso concerned § 2L1.2 of the Sentencing Guidelines, its analysis extends to § 4B1.2.  This is because both § 2L1.2 and § 4B1.2 define "crime of violence" by listing the generic offense of "aggravated assault."  Thus, our determination that Georgia aggravated assault qualifies as a "crime of violence" under § 2L1.2 means that it also qualifies as a "crime of violence" under § 4B1.2.

This would resolve the aggravated assault issue but for the fact that the documents expressly discussed at the sentencing hearing were not introduced into evidence.  On the other hand, we recognize that Ellis did not make the current aggravated assault argument before the district court.  The government contends the documents will show Ellis pled guilty to aggravated assault under O.C.G.A. § 16-5-21(a)(2), the same as the defendant in Morales Alonso, and moves this Court to supplement the record on appeal to include the documents.  Given that

11

this is a direct appeal and the documents were actually discussed, but not formally introduced into evidence, we conclude the better course is to remand this case to the district court: (1) to allow the parties to put these and any other relevant Shepard documents into evidence; and then (2) for the district court, as the Court did in Morales-Alonso, to apply the modified categorical approach to look to the Shepard documents and determine under which portion of the divisible aggravated assault statute Ellis was convicted.  See Mathis, 579 U.S. at ___, 136 S. Ct. at 2249.[8]

## B.  Georgia Party-To-A-Crime

The parties also dispute whether the party-to-a-crime feature of Ellis's aggravated assault conviction means his conviction does not qualify.

Under Georgia's party-to-a-crime statute, "every person concerned in the commission of a crime is a party thereto and may be charged and convicted of commission of the crime."  O.C.G.A. § 16-2-20(a).  A person is concerned in the commission of a crime if he: (1) directly commits the crime; (2) intentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime; (3) intentionally aids or abets the crime; or (4) "intentionally advises, encourages, hires, counsels, or procures another to commit the crime."  Id. § 16-2-20(b).

---

[8]Accordingly, the government's motion to supplement the appellate record is **DENIED**.

12

In this regard, we note that the comparable federal statute as to aiding and abetting has essentially the same language. Specifically, federal law punishes "as a principal" anyone who "commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission" or who "willfully causes an act to be done which if directly performed by him or another would be an offense against the United States." 18 U.S.C. § 2(a)-(b). With respect to whether a prior federal conviction qualifies as a crime of violence under 18 U.S.C. § 924(c)(3)(A), this Court has concluded that the fact that the defendant "was charged under the aiding and abetting statute is of no moment" because under § 2, "'[a] person who aids, abets, counsels, commands, induces or procures the commission of an offense is punishable as a principle,' and so 'the acts of the principle become those of the aider and abettor as a matter of law.'" In re Watts, 829 F.3d 1287, 1289-90 (11th Cir. 2016) (quoting In re Colon, 826 F.3d 1301, 1305 (11th Cir. 2016)).

As he did in his sentencing hearing, Ellis argues that Georgia's party-to-a-crime statute criminalizes conduct that falls outside § 4B1.2's definition of a crime of violence. Ellis contends that, even though a crime of violence includes "aiding and abetting," Georgia's party-to-a-crime statute is broader than "generic aiding and abetting" because it does not require that the defendant intend the full scope of the underlying offense or take an affirmative act in furtherance of the underlying

13

offense.  See Cash v. State, 297 Ga. 859, 864, 778 S.E. 2d 785, 790 (Ga. 2015) (concluding that even though the defendant was not aware that his codefendant would commit the assault using a firearm, the defendant was still liable as a party to the crime of aggravated assault because he "shared a criminal intent to commit an assault upon" the victim, and is therefore "chargeable with the foreseeable acts undertaken by [his codefendant]").

The government disagrees and responds that under Georgia law, the conduct of a defendant who was a party to an aggravated assault is legally the same as one who principally commits an aggravated assault.  See O.C.G.A. § 16-2-21(providing that a person who is a party to a crime can be indicted for and convicted of commission of the crime); Brinson v. State, 261 Ga. 884, 884, 413 S.E. 2d 443, 444 (Ga. 1992); see also Gonzales v. Duenas-Alvarez, 549 U.S. 183, 189-90, 195, 127 S. Ct. 815, 820-21, 823 (2007) (explaining that "American jurisdictions [have] eliminated the distinction among" principals and aiders and abettors who are present at the scene of the crime or help the principal before the crime, and instead have adopted the doctrine that an aider and abettor is criminally responsible "for any crime that 'naturally and probably' results from his intended crime," citing as an example Georgia's party-to-a-crime statute).  The government thus argues, much as this Court reasoned in In re Watts, that, because Ellis is guilty of aggravated assault, the manner in which Ellis was a party to that crime is

14

immaterial to whether his conviction is for a crime of violence.  The government further points out that Georgia law requires proof of a common criminal intent, and that mere presence at the scene or approval of the crime is insufficient to establish that someone was a party to the crime.  See Jordan v. State, 272 Ga. 395, 396, 530 S.E.2d 192, 194 (Ga. 2000); see also United States v. Cammorto, 859 F.3d 311, 315-18 (4th Cir. 2017) (rejecting an argument that Georgia's party-to-a-crime statute sweeps more broadly that the federal law on aiding and abetting).

In light of our decision to remand Ellis's case to the district court to examine the Shepard documents and determine which subsection of O.C.G.A. § 16-5-21 Ellis pled guilty to violating, we also remand the party-to-a-crime issue in this appeal.  On remand, the district court shall permit the parties to brief this issue and shall consider the Shepard documents and any arguments the parties make in determining whether Ellis's Georgia conviction for party to the crime of aggravated assault qualifies as a crime of violence under U.S.S.G. § 4B1.2.

**VACATED AND REMANDED.**