[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-14925
_____

D.C. Docket No. 1:15-cr-00261-SCJ-LTW-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

 versus


PAULINO MORALES-ALONSO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(January 5, 2018)

Before JULIE CARNES, EDMONDSON, Circuit Judges, and WILLIAMS,[*] District Judge.

JULIE CARNES, Circuit Judge:

This appeal requires us to decide whether Georgia aggravated assault as defined by O.C.G.A § 16-5-21(a)(2) is a crime of violence under the operative version of § 2L1.2 of the Sentencing Guidelines. Defendant Paulino Morales-Alonso was convicted in 2016 of illegally reentering the United States, in violation of 8 U.S.C. §§ 1326(a) and (b)(2), after having been deported following a conviction for aggravated assault under O.C.G.A § 16-5-21(a)(2). Based on the aggravated assault conviction, the district court imposed a sentencing enhancement that applies when a defendant has been deported after committing a "crime of violence" as defined by § 2L1.2(b)(1)(A)(ii) of the Guidelines. Defendant appealed the sentence, arguing that his Georgia aggravated assault conviction does not qualify as a crime of violence for purposes of § 2L1.2. We affirm.

## BACKGROUND

Defendant, a Mexican citizen who was in the United States illegally, was convicted in 2012 of committing an aggravated assault in Georgia. At the time of Defendant's conviction, O.C.G.A. § 16-5-21 defined "aggravated assault" as an "assault" committed:

---

[*] Honorable Kathleen Williams, United States District Judge for the Southern District of Florida, sitting by designation.

(1)    With intent to murder, to rape, or to rob;

(2)    With a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury; or

(3)    [Against a] person or persons without legal justification by discharging a firearm from within a motor vehicle toward a person or persons.

O.C.G.A. § 16-5-21(a) (2012).[1]  For purposes of this statute, an "assault" can be accomplished either by (1) attempting to "commit a violent injury to the person of another" or (2) committing an "act which places another in reasonable apprehension of immediately receiving a violent injury."  O.C.G.A. § 16-5-20(a). Defendant was convicted of violating subsection (a)(2) of Georgia's aggravated assault statute by assaulting his victim "with a brick, an object which when used offensively against a person is likely to result in serious bodily injury, by throwing it at and striking" the victim.

Following his Georgia aggravated assault conviction, Defendant was removed from the United States.  A few months after his removal, immigration officials again found Defendant in a Georgia jail after he had been arrested on charges of possessing methamphetamine and marijuana, obstructing a law enforcement officer, and giving a false name.  Defendant was convicted on those

---

[1]  The Georgia legislature has since amended the statute to add a fourth aggravator that is not relevant here.  *See* O.C.G.A. § 16-5-21(b)(3) (2016).

3

charges and, while incarcerated, he was charged federally with illegal reentry in violation of 8 U.S.C. §§ 1326(a) and (b)(2).  Defendant pled guilty and was convicted on the illegal reentry charge on June 14, 2016.

Pursuant to § 2L1.2(a) of the 2015 Sentencing Guidelines, the Pre-Sentence Report ("PSR") assigned Defendant a base offense level of 8.  Citing Defendant's prior Georgia conviction for aggravated assault, the PSR applied a 16-level enhancement under § 2L1.2(b)(1)(A)(ii) of the Guidelines.  At the time of Defendant's sentencing, that provision required such an enhancement when a defendant previously was deported after being convicted of a felony "crime of violence."  U.S.S.G. § 2L1.2(b)(1)(A)(ii) (2015).[2]  The PSR determined that Defendant's Georgia aggravated assault conviction qualified as a crime of violence, and that the enhancement was thus warranted.  After applying the enhancement and subtracting 3 levels for acceptance of responsibility, the PSR set Defendant's total offense level at 21 and his criminal history category at VI, yielding an advisory guideline range of 77 to 96 months.

---

[2]  Section 2L1.2 was amended in November, 2016, several months after Defendant's sentencing. *See* U.S.S.G. § 2L1.2 (2016).  Under the amended version, the level of enhancement applicable to a defendant who previously was deported after a felony conviction depends on the length of the sentence the defendant received for the offense. *Id.* § 2L1.2(b)(2).  The 2016 amendments are substantive rather than clarifying. *See United States v. Jerchower*, 631 F.3d 1181, 1185 (11th Cir. 2011) ("An amendment that alters the text of the Guideline itself suggests a substantive change[.]").  Thus, the pre-amended version of § 2L1.2 governs our analysis. *See* 18 U.S.C. § 3553(a)(4)(A)(ii) (instructing the sentencing court to apply the Guidelines "that . . . are in effect on the date the defendant is sentenced"); *Jerchower*, 631 F.3d at 1184 ("Substantive amendments to the Guidelines . . . are not applied retroactively on direct appeal.").

Defendant objected to the 16-level enhancement, arguing that his Georgia aggravated assault conviction does not qualify as a crime of violence for purposes of § 2L1.2(b)(1)(A)(ii).  The district court rejected Defendant's argument and applied the enhancement, but the court did vary down from the calculated offense level to an offense level of 19, which yielded a sentencing range of 63 to 78 months.  After giving Defendant credit for one month that he spent in ICE custody, the court imposed a sentence of 63 months.

## DISCUSSION

### I.     Standard of Review

The only issue on appeal is whether Defendant's Georgia aggravated assault conviction under O.C.G.A. § 16-5-21(a)(2) qualifies as a crime of violence for purposes of § 2L1.2(b)(1)(A)(ii), and thus warrants an enhancement under that provision.  We review the district court's ruling on that issue *de novo.  See United States v. Garcia-Martinez*, 845 F.3d 1126, 1129 (11th Cir. 2017).

### II.    Section 2L1.2's Crime of Violence Enhancement

The operative version of § 2L1.2(b)(1)(A)(ii) requires a 16-level enhancement if a defendant who is convicted of illegal reentry "previously was deported" after being convicted of a felony that is a "crime of violence."  U.S.S.G.

5

§ 2L1.2(b)(1)(A)(ii).  The commentary[3] to § 2L1.2 defines the term "crime of violence" to mean:

> [A]ny of the following offenses under federal, state, or local law: murder, manslaughter, kidnapping, <u>aggravated assault</u>, forcible sex offenses ..., statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2, comment. n.1(B)(iii) (emphasis added).  This definition is disjunctive.  *United States v. Palomino Garcia*, 606 F.3d 1317, 1326 (11th Cir. 2010).  Thus, a felony conviction qualifies as a crime of violence for purposes of § 2L1.2(b)(1)(A)(ii) if the conviction is for an offense that either (1) is enumerated in the first clause (the "enumerated offenses clause") of the commentary's definition or (2) satisfies the second clause (the "elements clause") of the definition because it has "the use, attempted use, or threatened use of physical force" as an element.  *See Garcia-Martinez*, 845 F.3d at 1129 ("We refer to the first part of the definition as the enumerated offenses clause and the second part as the elements clause.").

The Government argues that Defendant's Georgia aggravated assault conviction satisfies both the enumerated offenses clause and the elements clause of

---

[3] The commentary "is authoritative" as to the meaning of a term used in the Guidelines "unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of" the guideline at issue. *United States v. Jordi*, 418 F.3d 1212, 1216 (11th Cir. 2005).

6

§ 2L1.2's definition of crime of violence.  As discussed below, we agree that Defendant's conviction qualifies as a crime of violence under the enumerated offenses clause.  Accordingly, we affirm Defendant's sentence on that ground.[4]

## III.    Enumerated Offenses Clause Analysis

Although "aggravated assault" is included among the list of enumerated offenses in § 2L1.2's defining commentary, that does not mean Defendant's Georgia aggravated assault conviction automatically qualifies as a crime of violence for purposes of § 2L1.2(b)(1)(A)(ii).  *See Palomino Garcia*, 606 F.3d at 1327 (citing *Taylor v. United States*, 495 U.S. 575, 592 (1990) for the rule that enumerated offenses in a federal sentencing statute "must have some uniform definition independent of the labels employed by the various States' criminal codes" (internal quotation marks omitted)).[5]  Under the analytical framework set forth by the Supreme Court in *Taylor* and relied upon by this Court in *Palomino Garcia*, a conviction only constitutes a crime of violence under the enumerated offenses clause of § 2L1.2 if the elements of the statute of conviction are the same

---

[4]  Because the enumerated offenses clause supports the sentencing enhancement applied by the district court, we do not address the Government's elements clause argument.

[5]  *Taylor* arose in the context of a sentencing enhancement that is applicable under the Armed Career Criminal Act ("ACCA") when a defendant has three prior "violent felony" convictions, but its analytical framework applies to the enhancement required under § 2L1.2 when a defendant has been deported following a "crime of violence."  *See Garcia-Martinez*, 845 F.3d at 1129–30 (applying *Taylor* to determine whether the defendant's conviction qualified as a crime of violence under § 2L1.2's enumerated crimes clause).

7

as, or narrower than, the generic version of the enumerated offense. *See id.* at 1330–31. Thus, to determine whether Defendant's conviction qualifies as a crime of violence for purposes of § 2L1.2(b)(1)(A)(ii), we must first identify the essential elements of generic aggravated assault. *Id.* at 1331. Then, we must compare those elements to the Georgia aggravated assault statute to ensure that the crime Defendant was convicted of committing "roughly corresponds" to the generic version of aggravated assault. *Id.* (alteration accepted).

## A.    Generic Aggravated Assault

This Court has already completed the first step of the analysis. In *Palomino Garcia*, we defined generic "aggravated assault" for purposes of § 2L1.2 to mean "a criminal assault accompanied by the aggravating factors of either the intent to cause serious bodily injury to the victim or the use of a deadly weapon." *See id.* at 1332 (emphasis added). The Court in *Palomino Garcia* arrived at that definition by considering the elements of aggravated assault that are most commonly found in state definitions of the offense and by consulting "prominent secondary sources, such as criminal law treatises and the Model Penal Code." *See id.* at 1331. As the Court explained in *Palomino Garcia*, those sources indicate that the most common aggravating factors underlying an aggravated assault conviction are "the means used to commit the crime, such as use of a deadly weapon, and the consequences

8

of the crime, such as serious bodily injury." *Id.* at 1332 (internal quotation marks omitted).

Applying *Palomino Garcia*, generic aggravated assault has two essential elements. *Id.* at 1332. First, there must be a "criminal assault." *Id.* Second, the assault must be accompanied by either "the intent to cause serious bodily injury to the victim or the use of a deadly weapon." *Id.*[6]

## B.    Defendant's Georgia Aggravated Assault Conviction

Now we must compare the generic definition of aggravated assault set forth in *Palomino Garcia* with the elements of the Georgia aggravated assault statute Defendant was convicted of violating. *See id.* at 1331. In making that comparison, we apply a categorical approach. *See Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016). That is, we look at how the statute of conviction defines the offense at issue rather than looking at the particular facts underlying the defendant's conviction. *See Welch v. United States*, 136 S. Ct. 1257, 1262 (2016) ("Under the categorical approach, a court assesses whether a crime qualifies as a violent felony in terms of how the law defines the offense and not in terms of how an individual

---

[6] The defendant in *Palomino Garcia* had a prior conviction for aggravated assault in violation of Arizona Statute § 13-1204(A)(7), which defines aggravated assault to include an assault committed on a law enforcement officer. *Palomino Garcia*, 606 F.3d at 1325. The Court held that the conviction did not qualify as a crime of violence under the enumerated offenses clause of § 2L1.2(b)(1)(A)(ii) because the Arizona aggravated assault statute at issue did not require "either serious bodily injury to the victim or the use of a deadly weapon" but rather only "a simple assault with the sole aggravating factor being the victim's status as a law enforcement officer." *Id.* at 1331–33.

offender might have committed it on a particular occasion." (internal quotation marks omitted)).  In certain cases, we may apply a modified version of the categorical approach that allows us to look at "a limited class of documents"—known as *Shepard*[7] documents and including such items as the indictment, jury instructions, and plea agreement—"to determine what crime, with what elements, a defendant was convicted of" so that we can then "compare that crime, as the categorical approach commands, with the relevant generic offense." *Mathis*, 136 S. Ct. at 2249.  It is only appropriate to apply the modified categorical approach when the statute of conviction is "divisible" in that it "list[s] elements in the alternative, and thereby define[s] multiple crimes." *Id.*

> 1.    The aggravator component of Georgia's aggravated assault statute is divisible.

Again, Georgia's aggravated assault statute defines the offense of aggravated assault to include an assault that is committed (1) with the intent to murder, rape, or rob, (2) with a deadly weapon or an "object, device, or instrument" that is "likely to or actually does result in serious bodily injury" when used offensively, or (3) by discharging a gun in certain situations.  O.C.G.A. § 16-5-21(a) (2012).  Considered as a whole, this statute is potentially overbroad because some aggravated assault convictions, particularly convictions under

---

[7]  *Shepard v. United States*, 544 U.S. 13 (2005).

subsection (a)(1), might not categorically include the essential elements of generic

aggravated assault identified in *Palomino Garcia.* For example, an assault

committed with the intent to rob the victim might not categorically involve the

"intent to cause serious bodily injury" or "use of a deadly weapon" required by

*Palomino Garcia*'s definition of generic aggravated assault. *See Palomino Garcia*,

606 F.3d at 1332.

Nevertheless, O.C.G.A. § 16-5-21(a) clearly is divisible as to the aggravator

component of the statute. A state criminal statute is divisible when it defines

multiple crimes and sets out the elements of each crime in the alternative. *See*

*Mathis*, 136 S. Ct. at 2248 ("Elements are the constituent parts of a crime's legal

definition—the things the prosecution must prove to sustain a conviction."

(internal quotation marks omitted)). That is precisely what O.C.G.A. § 16-5-21(a)

does. To be convicted under the statute, a defendant must commit an assault that is

aggravated by one of the factors set forth in O.C.G.A. § 16-5-21(a)(1)-(3).

Georgia law requires that the particular aggravator be alleged specifically, and that

it be proven beyond a reasonable doubt. *See State v. Wyatt*, 295 Ga. 257, 260

(2014) ("An indictment charging aggravated assault must allege the element that

aggravates the crime above a simple assault, in this case the use of a deadly

weapon or dangerous object."). Thus, Georgia's aggravated assault statute sets

forth three different crimes, each of which includes a unique aggravator element

11

that must be specifically alleged and proven beyond a reasonable doubt for a conviction. *See id.*

>   2.  Defendant was convicted of assault with a deadly weapon or other qualifying object under subsection (a)(2) of Georgia's aggravated assault statute.

As discussed, when a statute is potentially overbroad and divisible, we may apply the modified categorical approach to determine which crime, with what elements, the defendant was convicted of committing, so that we may then compare those elements with the generic version of the enumerated offense. *See Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013) ("[T]he modified approach . . . helps effectuate the categorical analysis when a divisible statute, listing potential offense elements in the alternative, renders opaque which element played a part in the defendant's conviction.")  Applying the modified categorical approach in this case, it is apparent from the available *Shepard* documents that Defendant was convicted of committing aggravated assault with a deadly weapon or other qualifying "object, device, or instrument" in violation of O.C.G.A. § 16-5-21(a)(2).  The indictment charges Defendant with committing an assault on a person "with a brick, an object which when used offensively against a person is likely to result in serious bodily injury, by throwing it at and striking said victim." Defendant pled guilty to that charge.

Subsection (a)(2) of Georgia's aggravated assault statute is not further divisible.  Thus, the essential elements of Defendant's crime of conviction include: (1) an assault, (2) that is committed "[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury."  O.C.G.A. § 16-5-21(a)(2).

## C.    Comparison of Elements

Defendant concedes, as he must, that assault with a deadly weapon qualifies as generic aggravated assault under the definition of that offense set forth in *Palomino Garcia.*  But he argues that O.C.G.A. § 16-5-21(a)(2) is overbroad because, in addition to assault with a deadly weapon, the statute also encompasses assault with an "object, device, or instrument" that is "likely to or actually does result in serious bodily injury" when used offensively.  *See* O.C.G.A. § 16-5-21(a)(2).  We are unpersuaded by Defendant's argument and, for the reasons discussed below, we conclude that Georgia aggravated assault with a deadly weapon or other qualifying "object, device, or instrument" in violation of O.C.G.A. § 16-5-21(a)(2) contains substantially the same elements as generic aggravated assault.  *Accord United States v. Torres-Jaime*, 821 F.3d 577, 585 (5th Cir. 2016) (holding that Georgia aggravated assault in violation of O.C.G.A. § 16-5-21(a)(2) satisfies the enumerated offenses clause of § 2L1.2(b)(1)(A)(ii)).

13

1.    The Georgia Supreme Court has defined O.C.G.A. § 16-5-21(a)(2) to require assault with a deadly weapon for a conviction.

The Georgia Supreme Court has held that the "object, device, or instrument" phrase in O.C.G.A. § 16-5-21(a)(2) simply describes a particular type of deadly weapon. *See Green v. State*, 291 Ga. 287, 295 (2012) (stating that the "object, device, or instrument" language "is included in the phrase 'deadly weapon' when that phrase is used as a general reference to the aggravating circumstance in O.C.G.A. § 16-5-21(a)(2)."); *State v. Easter*, 297 Ga. 171, 173 (2015) (explaining that, because the "object, device, or instrument" language "simply describes a specific mode—rather than constituting an alternative mode—of 'deadly weapon' aggravated assault, . . . it is not error to refer to a 'deadly weapon' in instructing the jury on an aggravated assault count predicated on the use of an 'object, device, or instrument.'") (quoting *Green*, 291 Ga. at 295); *see also Smith v. Hardrick*, 266 Ga. 54, 55 (1995) (noting—in a case involving the use of defendant's hands—that Georgia aggravated assault requires the assault be "aggravated by either (a) an intention to murder, rape or rob, or (b) the use of a deadly weapon"). Specifically, the "object, device, or instrument" language refers to an object that is not a deadly weapon per se, but that is a deadly weapon because of the manner in which it is used by the defendant in a particular case. *See Green*, 291 Ga. at 295 (approving the trial court's instruction that "although hands are not deadly weapons per se,

14

they may or may not be deadly weapons depending upon the manner in which they are used and the circumstances of the case"); *Easter*, 297 Ga. at 172, 174 (noting that the trial court had properly instructed the jury that "the assaulting object—here a crowbar—was not a deadly weapon per se" but that it "may or may not be a deadly weapon depending upon the manner in which it is used in the circumstances of the case"). Thus, the Georgia Supreme Court has interpreted O.C.G.A. § 16-5-21(a)(2) to require in every case for a conviction the use of a deadly weapon—be it a deadly weapon per se (such as a gun), or an "object, device, or instrument" that is used as a deadly weapon under the particular circumstances of the case (such as the crowbar used by the defendant in *Easter*).

We are bound by the Georgia Supreme Court's interpretation of state law, including its determination of the elements of O.C.G.A. § 16-5-21(a)(2). *See Johnson v. United States*, 559 U.S. 133, 138 (2010). As clarified in *Green* and reiterated in *Easter*, the Georgia Supreme Court has defined the essential elements of a conviction for aggravated assault under O.C.G.A. § 16-5-21(a)(2) to include (1) an assault (2) that is committed either with a per se deadly weapon or with an "object, device, or instrument" that constitutes a deadly weapon because of the manner in which it is used in a particular case. Use of a deadly weapon must be shown for the conviction in Georgia. So, the elements correspond sufficiently with

15

the definition of generic aggravated assault set forth in *Palomino Garcia. See*

*Palomino Garcia*, 606 F.3d at 1332.

> 2.    Georgia's definition of deadly weapon for purposes of
> O.C.G.A. § 16-5-21(a)(2) to include an object that is deadly
> because of the manner in which it is used is consistent with the
> generic meaning of the term deadly weapon.

Acknowledging the import of *Green* and *Easter*, Defendant argues that

Georgia's definition of a qualifying deadly weapon under O.C.G.A. § 16-5-

21(a)(2) is overbroad.  But Defendant concedes that the term deadly weapon in this

country generally refers to an object that is dangerous due either to its intrinsic

properties or to the manner in which it is used.  For example, the Model Penal

Code defines "deadly weapon" to mean:

> any firearm or other weapon, device, instrument, material or
> substance, whether animate or inanimate, which in the manner
> it is used or is intended to be used is known to be capable of
> producing death or serious bodily injury.

Model Penal Code § 210.0(4) (emphasis added).  *See also* Black's Law Dictionary

1827 (10th ed. 2014) (defining "deadly weapon" to encompass any "device,

instrument, material, or substance that, from the manner in which it is used . . . is

calculated or likely to produce death" (emphasis added)); *Gov't of Virgin Islands*

*v. Robinson*, 29 F.3d 878, 886 (3d Cir. 1994) (noting that, under the common law,

"whether a weapon is deadly depends upon two factors:  (1) what it intrinsically is

and (2) how it is used.").  Georgia's aggravated assault statute, as interpreted by

16

the Georgia Supreme Court, similarly defines the term deadly weapon to encompass both a per se deadly weapon as well as any other "object, device, or instrument" that is "likely to or actually does result in serious bodily injury" because of the manner in which it is used in a particular case. *See* O.C.G.A. § 16-5-21(a)(2); *Green*, 291 Ga. at 295; *Easter*, 297 Ga. at 172, 173; *Hardrick*, 266 Ga. at 54–55.

> 3. Georgia's statutory definition of a deadly weapon to include an object "which, when used offensively, actually does result in serious bodily injury" is not overbroad.

Finally, we reject Defendant's more specific argument that Georgia's definition of a deadly weapon is overbroad because it includes an "object, device, or instrument" that "actually does result in serious bodily injury." Defendant contends that this language encompasses the use of an object that happens to cause injury in a particular case, regardless of the manner in which the object is used and even if injury is unlikely. As an example of an assault committed with such an object, Defendant proffers a hypothetical involving an "innocent, innocuous golf ball." In the hypothetical, a golfer disregards the presence of his victim down the fairway as he tees his golf ball off in the victim's direction. According to Defendant, if the golf ball flies toward the victim and causes him to reasonably fear an immediate and violent injury, then the golfer has committed simple assault in violation of O.C.G.A. § 16-5-20(a). If the golf ball subsequently

17

hits the victim and causes serious bodily injury, Defendant continues, then the golfer has committed aggravated assault in violation of O.C.G.A. § 16-5-21(a)(2). Defendant posits that, although the golfer in this scenario has violated O.C.G.A. § 16-5-21(a)(2), he has not committed generic aggravated assault as defined by *Palomino Garcia.*

Defendant's argument rests on a strained interpretation of O.C.G.A. § 16-5-21(a)(2). Contrary to Defendant's suggestion, O.C.G.A. § 16-5-21(a)(2) does not encompass the commission of an assault with any object that just happens to result in serious bodily injury, regardless of the manner in which the object is used. By its plain terms, O.C.G.A. § 16-5-21(a)(2) applies only to an "object, device, or instrument which, <u>when used offensively against a person</u>, is likely to or actually does result in serious bodily injury." O.C.G.A. § 16-5-21(a)(2). And as discussed above, in order to be convicted under § 16-5-21(a)(2), a defendant must use either (1) a per se deadly weapon or (2) an "object, device, or instrument" that qualifies as a deadly weapon because of the manner in which it is used by a defendant in a particular case. *See Hardrick*, 266 Ga. at 54–55 (concluding that an indictment charging defendant with assaulting the victim "by placing his hands around [her] neck and using his hands to apply pressure to her neck" was insufficient to charge aggravated assault because "it did not state that [the defendant] placed his hands around the victim's neck in an attempt to use them as a deadly weapon, or in an

attempt to rape, rob or murder the victim."); *Wheeler v. State*, 232 Ga. App. 749, 750 (1998) ("Although hands, feet, and a telephone receiver are not deadly weapons per se, a jury may find them to be deadly depending upon their use, wounds inflicted, and other surrounding circumstances." (internal quotation marks omitted)); *Fields v. State*, 285 Ga. App. 345, 347 (2007) (noting that the jury instructions had "properly directed the jury to determine whether [the defendant's] use of [a] baseball bat amounted to assault with a deadly weapon, and therefore to aggravated assault") .

As for Defendant's proffered hypothetical, to our knowledge there is no case in which conduct remotely similar to that of Defendant's imagined golfer has been held by Georgia's high courts to constitute aggravated assault under O.C.G.A. § 16-5-21(a)(2). Nor do we think a conviction under O.C.G.A § 16-5-21(a)(2) for the conduct described in the hypothetical is a realistic probability. Assuming a golf ball is an "object, device, or instrument" that could qualify as a deadly weapon in an appropriate case, there are no facts to suggest the golf ball in the hypothetical was used "offensively against a person" as required to trigger the deadly weapon aggravator under O.C.G.A § 16-5-21(a)(2). The Supreme Court has cautioned that we should not apply "legal imagination" when determining the elements of a state criminal offense. *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) (noting that "there must be a realistic probability, not a theoretical possibility, that the State

19

would apply its statute to conduct that falls outside" the qualifying definition of a predicate crime (citing *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) (internal quotation marks omitted))).  *See also James v. United States*, 550 U.S. 192, 208 (2007) (explaining that the categorical approach does not require that "every conceivable factual offense" must qualify), *overruled on other grounds by Samuel Johnson v. United States*, 135 S. Ct. 2551 (2015).  The hypothetical proffered by Defendant violates that principle.

## CONCLUSION

For the above reasons, we conclude that the elements of aggravated assault in violation of O.C.G.A. § 16-5-21(a)(2) are substantially the same as the elements of generic aggravated assault as defined by this Court in *Palomino Garcia.*  As such, we hold that Defendant's Georgia aggravated assault conviction under O.C.G.A. § 16-5-21(a)(2) satisfies the enumerated offenses clause of the operative version of § 2L1.2, and warrants the 16-level sentencing enhancement provided for in § 2L1.2(b)(1)(A)(ii).  Defendant's sentence is thus **AFFIRMED**.