[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13451

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

WILLIE MCCOY,
a.k.a. Demetrise McCoy,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 1:21-cr-00042-LAG-TQL-1

_____

Before WILSON, LAGOA, and BLACK, Circuit Judges.

PER CURIAM:

Willie McCoy appeals his conviction and sentence for possession of a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). He asserts his prior Georgia convictions for aggravated assault and possession with intent to distribute cocaine should not have qualified as a "crime of violence" and "controlled substance offense," respectively, under U.S.S.G. § 4B1.2 for purposes of sentencing under § 2K2.1(a)(2). He also contends 18 U.S.C. § 922(g)(1) is unconstitutional. McCoy additionally asserts the district court imposed a procedurally unreasonable sentence because it made an incorrect statement of fact about the outcome of one of his previous cases at sentencing. After review, we affirm.

## I. DISCUSSION

*A. Whether McCoy's conviction for aggravated assault qualified as a "crime of violence"*

The Sentencing Guideline for a violation of 18 U.S.C. § 922(g) is § 2K2.1, which provides for a base offense level of 24 if "the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 2K2.1(a)(2). The Guideline defines "crime of violence" by cross-reference to § 4B1.2, which provides: "[t]he term 'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—(1) has as an

element the use, attempted use, or threatened use of physical force against the person of another; or (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, [etc.]" *Id.* § 2K2.1, comment. (n.1); *id.* § 4B1.2(a).

At the time of McCoy's aggravated assault conviction in 2002, Georgia law provided "[a] person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." O.C.G.A. § 16-5-21(a)(2) (2002). Georgia "[a]ggravated assault has two elements: (1) commission of a simple assault . . . and (2) the presence of [a] statutory aggravator[]." *Guyse v. State*, 690 S.E.2d 406, 409 (Ga. 2010). 2002 Georgia law also provided "[a] person commits the offense of simple assault when he or she either: (1) [a]ttempts to commit a violent injury to the person of another; or (2) [c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury." O.C.G.A. § 16-5-20(a) (2002).

In *Morales-Alonso*, we held the aggravator component of Georgia's aggravated assault statute is divisible. *See United States v. Morales-Alonso*, 878 F.3d 1311, 1316 (11th Cir. 2018); *see* O.C.G.A. § 16-5-21(a). We then applied the modified categorical approach and concluded "the elements of aggravated assault in violation of O.C.G.A. § 16-5-21(a)(2) are substantially the same as the elements of generic aggravated assault," meaning the defendant's aggravated assault conviction satisfied the enumerated offenses clause of

U.S.S.G. § 2L1.2, which provides for enhanced base offense levels based on prior convictions for "crimes of violence" in illegal reentry cases. *Morales-Alonso*, 878 F.3d at 1316-20; *see* U.S.S.G. § 2L1.2(b).

In *Hicks*, we applied our reasoning from *Morales-Alonso* to a challenge brought under § 4B1.2(a). *See United States v. Hicks*, 100 F.4th 1295, 1298-99, 1301 (11th Cir. 2024). There, we explained the two guidelines "use materially identical language to define a 'crime of violence.'" *Id.* at 1298. The defendant in *Hicks* argued his Georgia conviction for aggravated assault with a deadly weapon did not qualify as a "crime of violence" under § 4B1.2(a)(2) because "the Georgia offense requires a *mens rea* of only recklessness, whereas generic aggravated assault requires a *mens rea* of . . . 'extreme indifference recklessness.'" *Id.* at 1299.

We held *Morales-Alonso* foreclosed Hicks's claim under the prior-panel-precedent rule even though *Morales-Alonso* did not specifically address his *mens rea* argument because our earlier "conclusion that Georgia aggravated assault with a deadly weapon is not categorically broader than generic aggravated assault was necessary to our Court's decision, and therefore constitutes a holding that binds future panels." *Id.* We explained there is no exception to the prior-precedent-rule when a prior panel failed to consider an argument raised before a later panel. *Id.* at 1300-01. We then explained the *Morales-Alonso* panel "did not limit its holding to that element or assume that the other elements of the generic and Georgia offenses were the same" but rather "explicitly concluded that

O.C.G.A. § 16-5-21(a)(2) contains substantially the same elements as generic aggravated assault and qualified as a 'crime of violence.'" *Id.* at 1301 (quotation marks omitted). Accordingly, we affirmed Hicks's sentence under § 2K2.1(a)(2). *Id.*

The district court did not err by finding McCoy's prior conviction for aggravated assault qualified as a "crime of violence" under § 4B1.2(b) for purposes of sentencing under § 2K2.1(a)(2). *See Hicks*, 100 F.4th at 1297 (reviewing *de novo* whether an offense is a crime of violence under the Sentencing Guidelines). McCoy's case is analogous to *Hicks*. As in *Hicks*, McCoy's prior conviction was for Georgia aggravated assault with a deadly weapon. *Hicks*, 100 F.4th at 1299; O.C.G.A. § 16-5-21(a)(2). And, as in *Hicks*, McCoy is arguing his prior conviction does not qualify as a "crime of violence" under § 4B1.2(a)(2) because of the state statute's *mens rea* requirement. *Hicks*, 100 F.4th at 1299. Accordingly, as in *Hicks*, McCoy's argument is foreclosed by *Morales-Alonso* under the prior-panel-precedent rule. Therefore, we affirm the district court's finding that McCoy's prior conviction for aggravated assault qualified as a "crime of violence."

*B.  Whether McCoy's conviction for possession with intent to distribute marijuana qualified as a "controlled substance offense"*

The Guidelines define "controlled substance offense" by cross-reference to § 4B1.2(b), which provides: "[t]he term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . prohibits the manufacture, import, export, distribution, or

dispensing of a controlled substance . . . or the possession of a controlled substance . . . with intent to . . . distribute." *Id.* § 2K2.1, comment. (n.1); *id.* § 4B1.2(b).

In *Dubois*, we considered a defendant's challenge to his sentence for firearm possession based, in part, on his contention that a prior marijuana conviction should not have qualified as a "controlled substance offense" within the meaning of § 4B1.2(b) for purposes of sentencing under § 2K2.1(a)(4)(A). *See United States v. Dubois*, 94 F.4th 1284, 1294-95 (11th Cir. 2024). We explained that, for prior state convictions, "controlled substance offenses" are defined by reference to the relevant state's drug schedules, meaning that any drug regulated by the state can qualify, "even if federal law does not regulate that drug." *Id.* at 1296-98. We also explained § 4B1.2(b)'s definition of "controlled substance offenses" incorporates the state drug schedule in effect at the time of the defendant's prior convictions. *Id.* at 1298-1300.

At the time of McCoy's conviction for possession with intent to distribute cocaine in January 2019, Georgia law listed "cocaine" as a "controlled substance." O.C.G.A. § 16-13-21(4) (2019) (defining a "controlled substance" as "a drug [or] substance . . . in Schedules I through V of Code Sections 16-13-25 through 16-13-29"); *id.* § 16-13-26(1)(D) (2019) (listing "cocaine" as a Schedule II controlled substance). Georgia law also criminalized possession with intent to distribute controlled substances. *Id.* § 16-13-30(b) (2019).

The district court did not err in finding McCoy's prior conviction for possession with intent to distribute cocaine qualified as

a "controlled substance offense" under § 4B1.2(b) for purposes of sentencing under § 2K2.1(a)(2). *See United States v. Bishop*, 940 F.3d 1242, 1253 (11th Cir. 2019) (reviewing whether a prior conviction qualifies as a "controlled substance offense" *de novo*). His categorical overbreadth arguments are now foreclosed under *Dubois*, to which we are bound to adhere under the prior-panel-precedent rule, because Georgia law listed "cocaine" as a "controlled substance" and criminalized possession with intent to distribute such substances in January 2019. *See Dubois*, 94 F.4th at 1296-1300; O.C.G.A. §§ 16-13-21(4) (2019), 16-13-26(1)(D) (2019), 16-13-30(b) (2019).

Accordingly, because McCoy had prior convictions for a "crime of violence" and a "controlled substance offense" for purposes of sentencing under § 2K2.1(a)(2), the district court did not err in assigning McCoy a base offense level of 24 under § 2K2.1(a)(2).

## C.  Whether 18 U.S.C. § 922(g)(1) is unconstitutional

The Second Amendment protects the right to keep and bear arms. U.S. Const. amend. II. The federal felon-in-possession statute prohibits anyone who has been convicted of a crime punishable by more than one year of imprisonment from possessing a firearm or ammunition. 18 U.S.C. § 922(g)(1). To obtain a conviction under § 922(g)(1), the government must prove the defendant knew he possessed a firearm and he knew he was barred from doing so at the time. *Rehaif v. United States*, 588 U.S. 225, 237 (2019).

In *District of Columbia v. Heller*, the Supreme Court considered a "law-abiding" citizen's challenge to the District of Columbia's total ban on handgun possession, including possession in the home. 554 U.S. 570, 574-76, 628 (2008). The Court held the Second Amendment right to bear arms "belongs to all Americans," but is "not unlimited." *Id.* at 581, 626. The Court noted that, while it "[did] not undertake an exhaustive historical analysis . . . of the full scope of the Second Amendment, nothing in [its] opinion should [have been] taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *Id.* at 626.

Following *Heller*, the courts of appeal adopted a two-step framework for Second Amendment challenges with which they first considered whether a law regulated activity within the scope of the Amendment based on its original historical meaning and second applied a means-end scrutiny test to determine the law's validity. *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 18-19 (2022). In *United States v. Rozier*, decided between *Heller* and *Bruen*, we held § 922(g)(1) was constitutional, "even if a felon possesses a firearm purely for self-defense." 598 F.3d 768, 770 (11th Cir. 2010). In reaching that conclusion, we noted the Supreme Court's statement in *Heller* that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons" was not dicta and stated § 922(g)(1) was "a presumptively lawful longstanding prohibition." *Id.* at 771 & n.6 (quotation marks omitted).

In *Bruen*, the Supreme Court explained the then-predominant means-end scrutiny test that was being applied by the courts of appeal was inconsistent with *Heller*'s historical approach. 597 U.S. at 24. Instead, the Supreme Court explained that after determining whether an individual's conduct is covered by the Second Amendment's plain text, courts should consider whether the regulation in question "is consistent with the Nation's historical tradition of firearm regulation." *Id*. The *Bruen* opinion repeatedly discussed the Second Amendment as protecting the rights of "law-abiding" citizens. *See id*. at 9, 26, 38, 70. In *Dubois*, decided after *Bruen*, we held § 922(g)(1) was still constitutional because *Bruen* was "[i]n keeping with *Heller*," which "did not cast doubt on felon-in-possession prohibitions," and therefore could not have abrogated *Rozier* under the prior-panel-precedent rule. 94 F.4th at 1293 (quotation marks omitted). In reaching that conclusion, we stated *Bruen* approved step one of the two-step framework and it "require[d] clearer instruction" from the Supreme Court before it would reconsider § 922(g)(1)'s constitutionality. *Id*. at 1292-93.

In *United States v. Rahimi*, the Supreme Court held § 922(g)(8), a different subsection of the statute which prohibits firearm possession by individuals subject to domestic violence restraining order, was constitutional because the law comported with the principles underlying the Second Amendment. 144 S. Ct. 1889, 1898-1902 (2024). In reaching that conclusion, the Court explained "some courts [had] misunderstood" its clarifications to the second step of the framework and that *Bruen* does not require a regulation to have a "historical twin." *Id*. at 1897-98 (quotation

marks omitted). The Court also again noted prohibitions on felons' possession of firearms are "presumptively lawful." *Id.* at 1902 (quoting *Heller*, 554 U.S. at 626-27).

The district court did not plainly err by not *sua sponte* finding that § 922(g)(1) is unconstitutional facially or as applied to McCoy. *See United States v. Wright*, 607 F.3d 708, 715 (11th Cir. 2010) (stating we generally review the constitutionality of a statute *de novo*, but when a defendant raises such a challenge for the first time on appeal, we review only for plain error). *Bruen* did not abrogate *Rozier*, meaning we are still bound to adhere to our prior findings that § 922(g)(1) is constitutional. *See Rozier*, 598 F.3d at 770; *Dubois*, 94 F.4th at 1292-93. Additionally, *Rahimi* did not abrogate *Dubois*, meaning the latter case is still binding as well. *See Dubois*, 94 F.4th at 1292-93. Accordingly, the district court could not have plainly erred by not finding that § 922(g)(1) was facially unconstitutional because there is no on-point precedent that dictates that result. *See United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003) (explaining an error is only "plain" if the issue is directly resolved by the explicit language of a statute or rule or by precedent from this Court or the Supreme Court). Further, to the extent *Rozier* and *Dubois* do not foreclose McCoy's as-applied challenge, the district court did not plainly err by not finding that § 922(g)(1) was unconstitutional as applied to him because, again, there is no on-point precedent that dictates that result, and because McCoy admitted he possessed a firearm and he knew he was barred from doing so at the time. *See Lejarde-Rada*, 319 F.3d at 1291; *Rehaif*, 588 U.S. at 237.

D. *Whether the district court imposed an unreasonable sentence*

In reviewing the reasonableness of a sentence, we first consider whether the district court committed a significant procedural error, such as selecting a sentence based on clearly erroneous facts. *Gall v. United States*, 552 U.S. 38, 51 (2007). "For a finding to be clearly erroneous, this Court must be left with a definite and firm conviction that a mistake has been committed." *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010) (quotation marks omitted). Even if the district court did commit an error, we are not required to vacate a sentence and remand the case if the district court would have likely sentenced the defendant in the same way without the error. *United States v. Scott*, 441 F.3d 1322, 1329 (11th Cir. 2006). An error is harmless if it had a "very slight effect" but the sentence was not "substantially swayed." *United States v. Mathenia*, 409 F.3d 1289, 1292 (11th Cir. 2005) (quotation marks omitted).

The district court did not abuse its discretion and impose a procedurally unreasonable sentence because of its incorrect statement about the outcome of the case associated with McCoy's April 25, 2009, offense conduct. *See Gall*, 552 U.S. at 51 (stating we generally review the reasonableness of a sentence for abuse of discretion); *Rothenberg*, 610 F.3d at 624. The court's misstatement was harmless because whether McCoy was found not guilty or pled guilty to a lesser offense on his previous offense did not affect his sentence. *See Scott*, 441 F.3d at 1329. Rather, the court explained it relied on "the facts of the case," which were in the PSI and undisputed. Further, the court explained its "great concern" and the

"biggest factor" in sentencing was McCoy's continuing criminal activity despite the number of times he was given an opportunity to not serve prison time, so even if the court's misstatement had a "very slight effect" on the sentence, the sentence was not "substantially swayed" and remand is not necessary. *See Mathenia*, 409 F.3d at 1292.

## II.  CONCLUSION

The district court did not err by finding McCoy's prior aggravated assault and cocaine convictions qualified as a "crime of violence" and "controlled substance offense," respectively, under U.S.S.G. § 4B1.2 for purposes of sentencing under § 2K2.1(a)(2). The district court did not plainly err by not *sua sponte* finding that 18 U.S.C. § 922(g)(1) was unconstitutional because this Court's binding precedent supports the constitutionality of § 922(g)(1). Finally, the district court's incorrect statement at sentencing about the outcome of one of McCoy's previous cases was harmless error.

**AFFIRMED.**