[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-11911

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

OMAR MALIK MILLER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 1:22-cr-00011-LAG-TQL-1

_____

Before ROSENBAUM, LAGOA, and WILSON, Circuit Judges.

PER CURIAM:

A grand jury indicted Defendant Omar Miller, a convicted felon, for knowingly possessing a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2). Miller pled guilty to that sole count in the indictment against him. And the district court sentenced Miller to 84 months of imprisonment followed by a 3-year term of supervised release.

The district court did so, in part, because the United States Sentencing Guidelines assign a base offense level of 24 for an offense involving the possession of a firearm by a convicted felon if the defendant committed any part of the instant offense after sustaining at least two prior felony convictions for a "crime of violence." U.S. SENT'G GUIDELINES MANUAL § 2K2.1(a)(2) cmt. n.1 (U.S. SENT. COMM'N 2023) [hereinafter U.S.S.G.]. Before Miller's instant offense, Georgia juries twice convicted him of aggravated assault with a deadly weapon in violation of O.C.G.A. § 16-5-21(a)(2). The district court, over Miller's objection, held that Georgia's crime of aggravated assault with a deadly weapon qualifies as a "crime of violence," as Section 4B1.2(a) of the Sentencing Guidelines defines the term. Miller timely appealed his sentence.

On appeal, Miller argues the district court erred in concluding that his prior convictions qualify as a crime of violence under the Sentencing Guidelines. We review *de novo* interpretations and applications of the Sentencing Guidelines. *United States v. Dupree*, 57 F.4th 1269, 1272 (11th Cir. 2023) (en banc). And that means we

review *de novo* whether an offense is a crime of violence within the meaning of the Sentencing Guidelines. *United States v. Harrison*, 56 F.4th 1325, 1330 (11th Cir. 2023).

But we agree with the district court that Georgia's crime of aggravated assault with a deadly weapon is a crime of violence as the Sentencing Guidelines define that term. Controlling precedent compels us to do so. *See United States v. Morales-Alonso*, 878 F.3d 1311, 1320 (11th Cir. 2018) (holding Georgia aggravated assault conviction qualifies as a crime of violence under Section 2L1.2 of the Sentencing Guidelines); *United States v. Hicks*, 100 F.4th 1295, 1299–1301 (11th Cir. 2024) (concluding Georgia's crime of "aggravated assault with a deadly weapon qualifies as a crime of violence" under Section 4b1.2(a)(2) of the Sentencing Guidelines). We thus affirm Miller's sentence.

## I.

We first recount the relevant Sentencing Guidelines and then explain how *Hicks* compels us to affirm Miller's sentence.

## A.

As we previewed, Section 2K2.1(a)(2) provides for a base offense level of 24 if a convicted felon-in-possession sustained at least two prior felony convictions for crimes of violence. Section 2K2.1(a)(2)'s commentary defines "crime of violence" by cross-reference to other parts of the Sentencing Guidelines: Section 4B1.2(a) and Application Note 1 of the Commentary to Section 4B1.2. *See* U.S.S.G. § 4B1.2(b) cmt. n.1. And we generally follow the Sentencing Commission's commentary to the Guidelines unless the

commentary is inconsistent with the Guidelines themselves. *Dupree*, 57 F.4th at 1274.  So we turn to Section 4B1.2(a) for its definition of a "crime of violence."

Section 4B1.2(a) defines a "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that" either (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another; or" (2) "is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c)."  U.S.S.G. § 4B1.2(a).

The second clause, called the enumerated-offenses clause, includes "aggravated assault" in the list of offenses that are crimes of violence.  *Id.* § 4B1.2(a)(2).  So the Sentencing Guidelines consider Miller's prior offenses for aggravated assault to be crimes of violence if the elements of Georgia's aggravated-assault crime "roughly correspond[]" to those of the Sentencing Guidelines' aggravated-assault crime.  *Morales-Alonso*, 878 F.3d at 1314–15.

Miller argues the two aggravated-assault crimes do not roughly correspond to each other.  Specifically, he contends a person can commit an aggravated assault under Georgia law "with a general intent *mens rea*, while generic federal aggravated assault requires a more exacting *mens rea*."  In other words, Miller suggests Georgia's aggravated-assault statute criminalizes more conduct than does the aggravated-assault crime for which the Sentencing

Guidelines increase an offender's sentence. So he claims it is possible that one could commit an aggravated assault under Georgia law without committing an aggravated assault as the Sentencing Guidelines contemplate that offense. And that, according to Miller, means his sentence cannot stand. *See Morales-Alonso*, 878 F.3d at 1315 (explaining "a conviction only constitutes a crime of violence under the enumerated offenses clause . . . if the elements of the statute of conviction are the same as, or narrower than, the generic version of the enumerated offense").

### B.

But we squarely rejected Miller's argument in *Hicks*. 100 F.4th at 1299. We did so for three reasons, each of which directly refutes the points Miller now raises on appeal.

First, we explained that "Georgia aggravated assault with a deadly weapon qualifies as a crime of violence under the enumerated offenses clause because it has 'substantially the same' elements as" does the Sentencing Guidelines' "generic aggravated assault." *Id*. at 1299 (quoting *Morales-Alonso*, 878 F.3d at 1320). We had already concluded as much in *Morales-Alonso*. To be sure, *Morales-Alonso* interpreted the enumerated-offense clause in Section 2L1.2 of the Guidelines, not Section 4B1.2(a)(2), which was at issue in *Hicks* (and is at issue here). But "[a]bsent indications to the contrary in the commentary, we interpret the same language used in two provisions of the Sentencing Guidelines consistently." *Id*. (citing *United States v. Martinez*, 964 F.3d 1329, 1333–36, 1334 n.2 (11th Cir. 2020)). And nothing in the Guidelines suggested "that the two

enumerated offenses clauses—both listing aggravated assault—should be read differently." *Id.* In fact, both used "nearly identical language." *Id.* So *Morales-Alonso* compelled us to conclude that Georgia's aggravated assault with a deadly weapon qualifies as a "crime of violence" under Section 4B1.2(a)(2). *Id.*

Second, we addressed Hicks's argument that *Morales-Alonso* should not apply because "Georgia aggravated assault with a deadly weapon is categorically broader than generic aggravated assault," *id.*—the same argument Miller makes here. We rejected it, explaining that our prior precedent rule foreclosed Hicks's argument. We highlighted that *Morales-Alonso* could not have held that Georgia aggravated assault with a deadly weapon qualifies as a crime of violence without concluding "Georgia aggravated assault with a deadly weapon is not categorically broader" than the Sentencing Guidelines' "generic aggravated assault." *Id.* Because that conclusion was necessary to our prior decision, we explained, it "constitute[d] a holding that binds future panels" and thus foreclosed Hicks's argument. *Id.* (citing *United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019)); *United States v. Kaley*, 579 F.3d 1246, 1253 n.10 (11th Cir. 2009) (explaining a holding is what is "necessary to the result reached" and cannot be "discarded without impairing the foundations of the holding").

We also recognized that *Morales-Alonso* did not consider the specific *mens-rea* argument Hicks made—again, the same one that Miller makes here. *Hicks*, 100 F.4th at 1299. But as we pointed out, our prior-precedent rule does not include an exception for

arguments our prior panels purportedly "failed to consider." *Id.* at 1300 (quoting *Gills*, 938 F.3d at 1198). We have "categorically rejected an overlooked reason or argument exception to the prior-panel-precedent rule," *In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015), and refused to consider attempts to impugn a prior panel's decision based on "a perceived defect in" its "reasoning or analysis as it relates to the law in existence at that time," *Gillis*, 938 F.3d at 1198 (quoting *Smith v. GTE Corp.*, 236 F.3d 1292, 1301–03 (11th Cir. 2001)). So we concluded that Hicks's contention that Georgia's aggravated-assault-with-a-deadly-weapon offense is broader than the Guidelines' generic aggravated-assault offense could not escape our prior precedent's conclusion to the contrary. *Hicks*, 100 F.4th at 1299–1300.

Third, we rejected Hicks's argument that *United States v. Jackson*, 55 F.4th 846 (11th Cir. 2022), *aff'd sub nom. Brown v. United States*, 602 U.S. 101 (2024), and *United States v. Penn*, 63 F.4th 1305, 1310-11 (11th Cir. 2023), allow us to depart from our prior-precedent rule. Miller repeats that argument here, too. We illustrated that *Jackson* and *Penn* were "materially different" and did "not apply" to our interpretation of the Sentencing Guidelines. *Hicks*, 100 F.4th at 1300.

*Jackson* addressed whether a defendant's Florida cocaine-related convictions were "serious drug offenses" under the Armed Career Criminal Act ("ACCA"). 55 F.4th at 850–51. We concluded that ACCA's definition of a "serious drug offense" covered Jackson's prior convictions but, in the process, *id.* at 861–62, rejected

the government's argument that our prior precedent foreclosed the defendant's challenge, *id.* at 854. As we explained, ACCA's definition of a "serious drug offense" includes multiple parts, and our prior precedent "did not address" the parts of the statutory definition that were at issue in *Jackson*. *Id.* at 854; *Hicks*, 100 F.4th at 1300–01. Simply, no prior holding bound the *Jackson* panel.

That posture recurred in *Penn*: A defendant challenged the conclusion that his Florida drug-related convictions qualified as a "serious drug offense" under ACCA, and the government contended that our prior precedent foreclosed the defendant's argument. 63 F.4th at 1310–11. We again rejected the government's invocation of our prior-precedent rule because our prior precedent simply did not "answer[] the question Penn . . . asked us to resolve." *Id.* at 1311. Just as in *Jackson*, no prior holdings bound us.

That was not the case in *Hicks*. In contrast to the defendants' arguments in *Jackson* and *Penn*—which also concerned the definition of a "serious drug offense," not the definition of a "crime of violence"—Hicks's position ran headlong into established precedent. *Morales-Alonso* "explicitly concluded that O.C.G.A. § 16-5-21(a)(2) 'contains substantially the same elements as generic aggravated assault' and qualified as a 'crime of violence.'" *Hicks*, 110 F.4th at 1301 (quoting *Morales-Alonso*, 878 F.3d at 1317, 1320). So accepting Hicks's *mens rea* argument would "necessarily [have] mean[t] that the panel in *Morales-Alonso* was wrong." *Id.* Our prior-precedent rule thus forbade us from accepting Hicks's overbreadth argument. *Id.* (citing *Gillis*, 938 F.3d at 1198).

The same goes for Miller, but doubly so. If we were to accept Miller's argument, we would undermine not only *Morales-Alonso* but also *Hicks*. Whatever the merits of *Hicks*'s reasoning, our prior precedent now requires that we follow it. *Gills*, 938 F.3d at 1198; *In re Lambrix*, 776 F.3d 789, 794; *GTE Corp.*, 236 F.3d at 1301–03. At bottom, *Hicks* holds that convictions under Georgia law for aggravated assault with a deadly weapon serve as predicates for Section "2K2.1(a)(2)'s increased base offense level of 24" when calculating the advisory sentencing range under the Guidelines. 100 F.4th at 1301.

When we apply that principle to Miller's conviction, it is clear the district court did not err in calculating the guidelines range for his sentence by starting from a base offense level of 24. Miller pled guilty to knowingly possessing a firearm as a felon. Before committing that offense, he sustained two convictions for aggravated assault with a deadly weapon under Georgia law.[1] And

---

[1] Miller argues that these convictions should not be used as crime-of-violence offenses because the government failed to submit documentation required by *Shepard v. United States*, 544 U.S. 13 (2005), to show with certainty the elements on which his convictions rested. We have since held that undisputed statements in a PSI qualify under *Shepard* as a suitable basis for evaluating whether a defendant's prior offenses merit imposing a sentencing enhancement. *United States v. McCloud*, 818 F.3d 591, 596, 599 (11th Cir. 2016). Here, the undisputed statements in the PSI support the conclusion that Miller committed the first offense with a knife and the second with a gun. Though the PSI could have been clearer in specifying which portion of the statute Miller was convicted under, it is still sufficient to show Miller was convicted of aggravated assault with a deadly weapon (a knife and a gun, respectively).

according to *Hicks*, Georgia aggravated assault with a deadly weapon is a "crime of violence." *Id.* Those three facts fulfill Section's 2K2.1(a)(2) conditions to apply an increased base level of 24 in calculating Miller's advisory guidelines range. *See* U.S.S.G. §§ 2K2.1(a)(2), 4B1.2(a)(2).

## II.

For these reasons, we affirm Miller's sentence of 84 months of imprisonment followed by a 3-year term of supervised release.

**AFFIRMED**.