[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10280

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

SANCHEZ MARQUITTE HICKS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:21-cr-00074-TWT-LTW-1

_____

Before NEWSOM, ANDERSON, and HULL, Circuit Judges.

HULL, Circuit Judge:

After pleading guilty, Sanchez Hicks appeals his sentence of 96 months' imprisonment for two counts of possession of a firearm by a felon. On appeal, Hicks argues that his two prior Georgia convictions for aggravated assault with a deadly weapon do not qualify as a "crime of violence" under U.S.S.G. § 2K2.1(a)(2), which references the crime-of-violence definition in U.S.S.G. § 4B1.2(a), and thus the district court erred in calculating his base offense level.

In *United States v. Morales-Alonso*, 878 F.3d 1311, 1313-20 (11th Cir. 2018), this Court held that a Georgia conviction for aggravated assault with a deadly weapon qualifies as a "crime of violence" under U.S.S.G. § 2L1.2, which uses a crime-of-violence definition contained in its commentary. The *Morales-Alonso* Court held that Georgia's aggravated assault with a deadly weapon crime contains substantially the same elements as generic aggravated assault. *Id.* at 1317, 1320.

Both § 4B1.2(a) and § 2L1.2's commentary contain enumerated offenses clauses that use materially identical language to define a "crime of violence" as a list of offenses, and "aggravated assault" appears in both lists. For the reasons explained herein, we conclude that Hicks's challenge to his base offense level fails.

## I.  BACKGROUND

A grand jury indicted Hicks on two counts of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  Count One charged that Hicks possessed a firearm on May 26, 2017, and Count Two charged that he possessed a firearm on January 25, 2019.  Hicks entered a non-negotiated plea of guilty to both counts.

At sentencing, Hicks did not dispute that he had two Georgia aggravated assault convictions from 2009 and 2015.  The 2009 conviction was for assaulting two persons "with a deadly weapon, to wit: a handgun" by shooting them.  The 2015 conviction was for "an assault upon [a] person . . . with a handgun" during an attempted armed robbery.

Given these two Georgia aggravated assault convictions, the presentence investigation report ("PSI") recommended a base offense level of 24 pursuant to U.S.S.G. § 2K2.1(a)(2).  Under § 2K2.1(a)(2), a base offense level of 24 applies when the defendant committed his firearm offense after two felony convictions for a "crime of violence" as defined in § 4B1.2(a), which includes "aggravated assault."  *See* U.S.S.G. §§ 2K2.1(a)(2) & cmt. n.1, 4B1.2(a)(2).  Hicks objected to the PSI's base offense level of 24, arguing that his two Georgia convictions were not "crimes of violence."  Hicks maintained that *Morales-Alonso* did not foreclose his particular challenge.

The district court overruled Hicks's objection to § 2K2.1(a)(2)'s base offense level, finding it was bound by our

*Morales-Alonso* holding that a Georgia conviction for aggravated assault with a deadly weapon qualifies as a crime of violence. After making adjustments not relevant to this appeal, the district court calculated a total offense level of 23, which with Hicks's criminal history category of VI, yielded an advisory guidelines range of 92 to 115 months' imprisonment. The district court imposed a 96-month sentence on each felon-firearm conviction, to be served concurrently.

## II.  DISCUSSION

### A.    Standard of Review

We review *de novo* the interpretation and application of the Sentencing Guidelines. *United States v. Dupree*, 57 F.4th 1269, 1272 (11th Cir. 2023) (en banc). We also review *de novo* whether an offense is a "crime of violence" within the meaning of the Sentencing Guidelines. *United States v. Harrison*, 56 F.4th 1325, 1330 (11th Cir. 2023).

### B.    Crime of Violence Under § 2K2.1(a)(2)

The Sentencing Guidelines assign a base offense level of 24 for an offense involving the possession of a firearm and/or ammunition by a convicted felon if the defendant committed the instant offense after sustaining at least two felony convictions for a "crime of violence." U.S.S.G. § 2K2.1(a)(2). Section 2K2.1 cross references U.S.S.G. § 4B1.2(a) for the definition of a "crime of violence." U.S.S.G. § 2K2.1, cmt. n.1.

In turn, § 4B1.2(a) defines "crime of violence" as follows:

(a)  CRIME OF VIOLENCE.—The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (2) is murder, voluntary manslaughter, kidnapping, *aggravated assault*, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a) (emphasis added).  The second clause, referred to as an enumerated offenses clause, includes "aggravated assault" in the list of offenses that are crimes of violence.  *Id.* § 4B1.2(a)(2).

**C.    *Morales-Alonso***

In *Morales-Alonso*, this Court squarely addressed a Georgia conviction for aggravated assault with a deadly weapon under O.C.G.A. § 16-5-21(a)(2).  878 F.3d at 1313-20.  *Morales-Alonso* involved the definition of crime of violence applicable to U.S.S.G. § 2L1.2 (2015).  *Id.* at 1313 & n.2.

Like  § 4B1.2(a)(2), § 2L1.2's definition of "crime of violence," found in its commentary, contained an enumerated offenses clause, stating as follows:

"Crime of violence" means any of the following offenses under federal, state, or local law: murder, manslaughter, kidnapping, *aggravated assault*, forcible sex offenses (including where consent to the conduct is not given or is not legally valid, such as where consent to the conduct is involuntary, incompetent, or coerced), statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2, cmt. n.1(B)(iii) (2015) (emphasis added); *see Morales-Alonso*, 878 F.3d at 1314. While *Morales-Alonso* addressed the enumerated offenses clause applicable to § 2L1.2, not the one found in § 4B1.2(a)(2), both clauses use materially identical language to define "crime of violence" as a list of offenses, and both lists include the offense of "aggravated assault." *Compare* U.S.S.G. § 2L1.2, cmt. n.1(B)(iii) (2015), *with id.* § 4B1.2(a)(2).

In *Morales-Alonso*, this Court held that a Georgia conviction for aggravated assault with a deadly weapon under O.C.G.A. § 16-5-21(a)(2) qualified as a crime of violence under the enumerated offenses clause in § 2L1.2's definition of "crime of violence." 878 F.3d at 1313-20. Applying our prior decision in *United States v. Palomino Garcia*, 606 F.3d 1317 (11th Cir. 2010), the *Morales-Alonso* Court explained that generic aggravated assault has two essential elements: (1) a criminal assault (2) that is accompanied by either

the intent to cause serious bodily injury to the victim or the use of a deadly weapon. *Id.* at 1315.

The *Morales-Alonso* Court then looked to Georgia's aggravated assault statute, O.C.G.A. § 16-5-21(a)(2), and concluded that (1) it was divisible as to its aggravator component, and (2) the defendant was convicted of the version of aggravated assault that involved the use of a deadly weapon. *Id.* at 1316-17. Next, the Court determined that O.C.G.A. § 16-5-21(a)(2) was not further divisible, so its essential elements were "(1) an assault, (2) that is committed '[w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury.'" *Id.* at 1317.

Comparing those elements to the elements of generic aggravated assault, the *Morales-Alonso* Court "conclude[d] that Georgia aggravated assault with a deadly weapon or other qualifying 'object, device, or instrument' in violation of O.C.G.A. § 16-5-21(a)(2) contains substantially the same elements as generic aggravated assault." *Id.* The Court rejected the defendant's argument that the Georgia statute was categorically broader than the generic offense because it also encompassed assault "with an 'object, device, or instrument' that is 'likely to or actually does result in serious bodily injury.'" *Id.* at 1317-20. The Court held that Georgia aggravated assault under O.C.G.A. § 16-5-21(a)(2) "satisfies the enumerated offenses clause" of § 2L1.2. *See generally id.* at 1313-20.

**D.    Hicks's Claim**

Hicks argues that a Georgia conviction for aggravated assault with a deadly weapon does not qualify as a "crime of violence" under the enumerated offenses clause in § 4B1.2(a)(2). Specifically, Hicks contends that the Georgia offense requires a *mens rea* of only recklessness, whereas generic aggravated assault requires a *mens rea* of "extreme indifference to human life," which Hicks terms "extreme indifference recklessness." Hicks's challenge is that the Georgia offense is categorically broader than the generic offense. Hicks's claim fails for several reasons.

First, our Court's holding in *Morales-Alonso* forecloses Hicks's claim. The *Morales-Alonso* Court held that Georgia aggravated assault with a deadly weapon qualifies as a crime of violence under the enumerated offenses clause because it has "substantially the same" elements as generic aggravated assault. *Id.* at 1320. As already noted, the enumerated offenses clauses for U.S.S.G. § 2L1.2 and § 4B1.2(a)(2) use nearly identical language to define "crime of violence" as a list of offenses and "aggravated assault" appears in both lists. *Compare* U.S.S.G. § 2L1.2, cmt. n.1(B)(iii), *with id.* § 4B1.2(a)(2).

Absent indications to the contrary in the commentary, we interpret the same language used in two provisions of the Sentencing Guidelines consistently. *United States v. Martinez*, 964 F.3d 1329, 1333-36, 1334 n.2 (11th Cir. 2020) (interpreting the phrase "another felony offense" of drug trafficking in § 2K2.1(b)(6)(B) as consistent with the phrase "drug trafficking

23-10280                Opinion of the Court                         9

offense" defined in the commentary to § 2L1.2). Nothing in the two guideline provisions or their commentary suggest that the two enumerated offenses clauses—both listing aggravated assault—should be read differently here. Accordingly, we are bound by *Morales-Alonso*'s holding. *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) (stating that under this Court's prior panel precedent rule, a prior panel's holding binds subsequent panels "unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*").

Second, we recognize that Hicks contends that our prior panel precedent rule "has no role to play here" because the *Morales-Alonso* Court did not address his specific argument about the different *mens rea* elements for Georgia and generic aggravated assault. *Morales-Alonso*'s conclusion that Georgia aggravated assault with a deadly weapon is not categorically broader than generic aggravated assault was necessary to our Court's decision, and therefore constitutes a holding that binds future panels. *See United States v. Gillis*, 938 F.3d 1181, 1198 (11th Cir. 2019); *see also United States v. Kaley*, 579 F.3d 1246, 1253 n.10 (11th Cir. 2009) (explaining that the holding is what "was necessary to the result reached" and could not be "discarded without impairing the foundations of the holding").

Hicks's challenge, essentially, is that Georgia aggravated assault with a deadly weapon is categorically broader than generic aggravated assault for a reason or argument that the *Morales-Alonso* panel failed to consider. But "there is no exception to the [prior

panel precedent] rule where the prior panel failed to consider arguments raised before a later panel." *Gillis*, 938 F.3d at 1198. Indeed, this Court has "categorically rejected an overlooked reason or argument exception to the prior-panel-precedent rule." *In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015). Nor is there an exception to the rule based on "a perceived defect in the prior panel's reasoning or analysis as it relates to the law in existence at that time." *Gillis*, 938 F.3d at 1198 (quoting *Smith v. GTE Corp.*, 236 F.3d 1292, 1301-03 (11th Cir. 2001)).

Third, Hicks relies on *United States v. Jackson*, 55 F.4th 846 (11th Cir. 2022), *cert. granted*, 143 S. Ct. 2457 (U.S. May 15, 2023),[1] not for what it holds but for the fact that it declined to apply our prior panel precedent rule. We explain why *Jackson* is materially different and does not apply here.

In *Jackson*, this Court addressed whether the defendant's Florida cocaine-related convictions were "serious drug offenses" under the Armed Career Criminal Act ("ACCA"). 55 F.4th at 850-51. The ACCA defines a "serious drug offense," in part, as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (*as defined in section 102 of the Controlled Substances Act (21*

---

[1] The grant of *certiorari* in *Jackson* is not about our prior panel precedent rule. The question in *Jackson* is whether the "serious drug offense" definition in the ACCA "incorporates the federal drug schedules that were in effect at the time of the federal firearm offense . . . or . . . at the time of the prior state drug offense (as the Eleventh Circuit held below)." *Jackson v. United States*, No. 22-6640 (Question Presented Report).

*U.S.C. [§] 802*)), for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii) (emphasis added). Prior to *Jackson*, our Court held that this statutory "serious drug offense" definition requires only that the state offense "involve" the conduct of "manufacturing, distributing, or possessing with intent to manufacture or distribute" and does not require a generic-offense matching exercise. *See United States v. Xavier Smith*, 983 F.3d 1213, 1222-23 (11th Cir. 2020). Our Court also held that a "serious drug offense" has no *mens rea* requirement as to the illicit nature of the drug. *See United States v. Travis Smith*, 775 F.3d 1262, 1267-68 (11th Cir. 2014).

In contrast, the wholly separate question in *Jackson* involved the meaning of the statutory language "as defined in section 102 of the Controlled Substances Act." 55 F.4th at 853. Specifically, the question was whether this statutory part of the "serious drug offense" definition "incorporates the version of the controlled-substances schedules in effect when the defendant was convicted of his prior state drug offenses or the version in effect when he committed his present firearm offense." *Id.*

In answering that question, the *Jackson* Court rejected the government's argument that our prior ACCA precedent in *Xavier Smith* and *Travis Smith* foreclosed the defendant's challenge. *Id.* at 852-54. The Court explained that those precedents construed a different part of the ACCA's "serious drug offense" definition—whether the offense was one "involving manufacturing, distributing, or possessing with intent to manufacture or

distribute"—and thus did not express a binding holding as to the other part of the "serious drug offense" definition that required the state offense to involve "a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. [§] 802)." *Id.* at 853-54.

The *Jackson* Court observed that "[a]t best" those prior decisions "assumed that this part of the [ACCA's] 'serious drug offense' definition and [the Florida drug statute] encompass the same universe of substances," but that "assumptions are not holdings." *Id.* at 853-54 (quotation marks omitted). *Jackson* acknowledged that this Court has "categorically rejected an overlooked reason or argument exception to the prior-panel-precedent rule." *Id.* at 853 (quotation marks omitted). But the *Jackson* Court pointed out that the question now was about what version of the federal controlled substances schedules the ACCA's "serious drug offense" definition incorporates. *Id.* Thus, the *Jackson* Court concluded it was not bound by our earlier decisions because they "did not address the question this appeal presents." *Id.* at 854; *see also United States v. Penn*, 63 F.4th 1305, 1310-11 (11th Cir. 2023) (citing *Jackson* and reiterating that those same ACCA precedents did not foreclose the defendant's specific challenge to whether a particular Florida drug conviction qualified as a "serious drug offense" because it was not "presented and decided" in those precedents).

Notably too, both *Jackson* and *Penn* involved the definition of "serious drug offense." What's more, neither *Jackson* nor *Penn*

involved an enumerated offenses clause that defined a "crime of violence" and listed aggravated assault as a crime of violence. Simply put, *Jackson* is materially different from this case.

Unlike in *Jackson*, the prior panel precedent rule applies here. In *Morales-Alonso*, the defendant claimed the Georgia statute was categorically broader than the generic offense and focused on the types of weapons that could be used to commit a Georgia aggravated assault with a deadly weapon under O.C.G.A. § 16-5-21(a)(2). 878 F.3d at 1317-20. But in rejecting the defendant's overbreadth argument, the *Morales-Alonso* Court did not limit its holding to that element or assume that the other elements of the generic and Georgia offenses were the same. Instead, the *Morales-Alonso* Court explicitly concluded that O.C.G.A. § 16-5-21(a)(2) "contains substantially the same elements as generic aggravated assault" and qualified as a "crime of violence." *Id.* at 1317, 1320. Thus, Hicks's argument about the *mens rea* element, if accepted, would necessarily mean that the panel in *Morales-Alonso* was wrong in concluding that Georgia aggravated assault "contains substantially the same elements as generic aggravated assault" and thus is not categorically overbroad for purposes of the enumerated offenses clause. Therefore, Hicks's overbreadth argument is foreclosed by *Morales-Alonso*. *See Gillis*, 938 F.3d at 1198.

For these reasons, the district court correctly concluded it was bound by *Morales-Alonso* and properly applied U.S.S.G. § 2K2.1(a)(2)'s increased base offense level of 24 in calculating

14                    Opinion of the Court                    23-10280

Hicks's advisory guidelines range.    We affirm Hicks's 96-month total sentence.

**AFFIRMED.**