[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-11810

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

CHRISTOPHER SIMS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 1:23-cr-00005-LAG-TQL-1

_____

Before JORDAN, JILL PRYOR, and LUCK, Circuit Judges.

PER CURIAM:

After appellant Christopher Sims pleaded guilty to possessing a firearm as a convicted felon, the district court imposed a sentence of 96 months' imprisonment. On appeal, Sims raises several challenges to his sentence. After careful consideration, we affirm.

## I.

In November 2022, law enforcement officers arrested Sims on an outstanding warrant. When an officer patted down Sims, he found that Sims was carrying a semiautomatic pistol. Sims was then charged with one count of possessing a firearm as a convicted felon. *See* 18 U.S.C. § 922(g)(1). For this offense, he faced a maximum penalty of 15 years' imprisonment. *See id.* § 924(a)(8). He pleaded guilty to the charge.

Before sentencing, a probation officer prepared a presentence investigation report ("PSR"). The PSR reported that Sims's base offense level was 24 because he committed the offense after sustaining at least two felony convictions for crimes of violence. *See* U.S. Sent'g Guidelines Manual § 2K2.1(a)(2). The PSR treated Sims's convictions for aggravated assault with a deadly weapon under Georgia law and armed robbery under Georgia law as convictions for crimes of violence.

Although Sims pleaded guilty in his federal criminal case, the PSR did not apply a downward adjustment for acceptance of responsibility. It noted that while in federal custody awaiting sentencing Sims had twice been found with contraband. The first incident occurred in September 2023, when a corrections officer saw that Sims had a cellphone. The second incident occurred in April 2024, when Sims was again found with a cellphone. When corrections officers then searched Sims's possessions, they found marijuana and tobacco hidden in his mattress. Based on these incidents, the probation officer determined that Sims had not "terminated or withdrawn from criminal conduct or association" and recommended that he not receive a downward adjustment for acceptance of responsibility. Doc. 39-1 at 2.[1] The PSR reported that Sims's total offense level was 24.

The PSR also detailed Sims's criminal history. In 2007, when he was 20 years old, Sims took money from a female victim and slapped her. He later pleaded guilty in Georgia state court to several crimes, including simple assault, and received a sentence of 12 months' imprisonment.

The PSR also reflected that Sims had three separate criminal convictions in Georgia for crimes committed in May and June 2009. The first conviction arose out of an incident when Sims pulled a gun on a woman, shot her in the leg, and threatened to kill her. He pleaded guilty to aggravated assault with a deadly weapon

---

[1] "Doc." numbers refer to the district court's docket entries.

and hijacking a motor vehicle; he received a 15-year sentence. The second conviction arose out of an incident when Sims assaulted one person with a gun and threatened to shoot another. He pleaded guilty to two counts of simple assault and received a 12-month sentence. In the third incident, Sims committed an armed robbery at a McDonald's restaurant and used a firearm to take a victim's keys, wallet, and cell phone. He pleaded guilty to armed robbery and other crimes and received a 15-year sentence.

The PSR reported that in July 2022 Sims completed the custodial sentences for the aggravated assault with a deadly weapon and armed robbery convictions and was released on parole. Just a few months later, while still on parole, he committed the offense in this case.

After reciting Sims's criminal history, the PSR reported that he had a criminal history score of 9 and was in criminal history category IV. Based on his total offense level and criminal history category, the PSR calculated his guidelines range as 77 to 96 months' imprisonment.

Sims objected to the PSR. First, he argued that his base offense level should not be 24 because a Georgia conviction for aggravated assault does not qualify as a crime of violence. Second, he asserted that he should receive a two-level reduction in his offense level for acceptance of responsibility. *See* U.S.S.G. § 3E1.1. He urged the court not to consider his possession of contraband while incarcerated, arguing that this conduct was unrelated to whether

he had accepted responsibility for possessing a firearm as a convicted felon.

At the sentencing hearing, the district court overruled Sims's objections. It explained that "under binding Eleventh Circuit precedent," the Georgia crime of aggravated assault with a deadly weapon qualified as a crime of violence. Doc. 52 at 4. And the court refused to grant Sims credit for acceptance of responsibility. It explained that he had admitted to possessing a cellphone while incarcerated in September 2023. Based on this admission, the court found that he had "continue[d] to violate the law" and determined "in [its] discretion" that he had "not earned the . . . reduction for acceptance of responsibility." *Id.* at 11. After overruling Sims's objections, the court calculated his guidelines range as 77 to 96 months' imprisonment.

The government then requested an upward variance based on the sentencing factors set forth at 18 U.S.C. § 3553(a).[2] It

---

[2] Under § 3553(a), a district court is required to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes" of the statute. 18 U.S.C. § 3553(a). These purposes include the need to: reflect the seriousness of the offense; promote respect for the law; provide just punishment; deter criminal conduct; protect the public from the defendant's future criminal conduct; and effectively provide the defendant with educational or vocational training, medical care, or other correctional treatment. *Id.* § 3553(a)(2). The court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)–(7).

presented testimony from an assistant warden at the detention center where Sims was incarcerated who described the two incidents when Sims was found with contraband.

Sims sought a downward variance. He acknowledged that he broke the law by possessing the firearm and apologized for his actions. But he asked the court to consider his history and characteristics, including that he had grown up in a violent neighborhood and been surrounded by violence, physical abuse, and emotional abuse while in state prison. He also told the court that in October 2022, just one month before he committed the firearm offense, he had been shot. Sims stated that he acquired the firearm after the shooting because he was "scared for [his] life." *Id.* at 34. Sims admitted that he possessed a cell phone while incarcerated and said that he used the phone to communicate with family about his infant daughter.

After hearing from the parties, the court imposed a sentence of 96 months, which was at the top of the applicable guidelines range. The court imposed this sentence after considering the relevant § 3553(a) factors including "the nature and circumstances of the offense, the history and characteristics of the defendant, the need to promote respect for the law, the need to protect the community, as well as the need to avoid unwarranted sentencing disparities." *Id.* at 39. The court described Sims's criminal history, which included three previous convictions for offenses in which he used a firearm to commit a felony, as "very, very concerning." *Id.* at 41. The court acknowledged Sims's explanation that he acquired

the firearm to protect himself after being shot. But it noted that he had previously "hurt other people with firearms" and stated that it was "concerned about [him] having a gun because [he has] shown that [he] will use the gun to hurt other people in the public." *Id.*

This is Sims's appeal.

## II.

Several standards of review govern this appeal. First, we review *de novo* whether a previous conviction qualifies as a "crime of violence." *United States v. Rosales-Bruno*, 676 F.3d 1017, 1020 (11th Cir. 2012). Second, we review for clear error a district court's sentencing decision not to give a defendant credit for acceptance of responsibility. *United States v. Amedeo*, 370 F.3d 1305, 1320 (11th Cir. 2004). To be clearly erroneous, the finding of the district court must leave us with a "definite and firm conviction that a mistake has been committed." *United States v. Rothenberg*, 610 F.3d 621, 624 (11th Cir. 2010) (citation modified). Third, we review the substantive reasonableness of a sentence under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007).

## III.

On appeal, Sims raises three challenges to his sentence. First, he argues that the district court erred in treating his previous Georgia conviction for aggravated assault with a deadly weapon as a crime of violence and applying a base offense level of 24. Second, he asserts that the district court erred when it refused to award a reduction in his offense level for acceptance of responsibility.

Third, he challenges his sentence as substantively unreasonable. We address each issue in turn.

## A.

We begin with Sims's challenge to his base offense level. Section 2K2.1 of the Sentencing Guidelines addresses the base offense level that applies when a defendant unlawfully possesses a firearm as a convicted felon. *See* U.S.S.G. § 2K2.1. In general, a base offense level of 12 applies. *See id.* § 2K2.1(a)(7). But when a defendant unlawfully possesses a firearm "subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense," the base offense level becomes 24. *Id.* § 2K2.1(a)(2).

Sims says that the district court erred in applying a base offense level of 24 because his Georgia conviction for aggravated assault with a deadly weapon does not qualify as a crime of violence under § 2K2.1(a)(2). He argues that this offense is not a crime of violence because it can be committed with a *mens rea* of recklessness.

This challenge is foreclosed by precedent. We recently held that a Georgia conviction for aggravated assault with a deadly weapon qualifies as a crime of violence for purposes of § 2K2.1. *See United States v. Hicks*, 100 F.4th 1295, 1299 (11th Cir. 2024). In *Hicks*, we rejected the argument that this crime does not qualify as a crime of violence under § 2K2.1 because it can be committed through reckless conduct. *Id.* Given our precedential decision in *Hicks*, we must reject Sims's challenge that Georgia aggravated assault with

a deadly weapon does not qualify as a crime of violence. *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) (explaining that "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting en banc"). Accordingly, we conclude that the district court did not err in applying a base offense level of 24.

**B.**

Sims also argues that the district court erred when it refused to award a two-level reduction to his offense level for acceptance of responsibility. He says that he accepted responsibility because he pleaded guilty, did not put the government to its burden of proof at trial, and cooperated with the probation officer preparing the PSR. Although Sims presented evidence that could support a finding that he accepted responsibility, we cannot say that the district court's decision concluding that he had not accepted responsibility was clearly erroneous.

Under the Sentencing Guidelines, a defendant who "clearly demonstrates acceptance of responsibility for his offense" receives a two-level reduction to his offense level. U.S.S.G. § 3E1.1(a). A defendant's guilty plea before trial combined with truthful admissions regarding his conduct constitutes significant evidence of acceptance of responsibility. *Id.* § 3E1.1 cmt. n.3. In deciding whether a defendant has accepted responsibility, a court may weigh other considerations including whether he has voluntarily terminated or withdrawn from criminal conduct or associations. *Id.* § 3E1.1 cmt.

n.1(B). A court may consider a defendant's "subsequent criminal conduct, even if it is unrelated to the offense of conviction, in determining whether a decrease for acceptance of responsibility is appropriate." *United States v. Pace*, 17 F.3d 341, 343 (11th Cir. 1994). The question of whether a defendant has "adequately manifested acceptance of responsibility is a flexible, fact sensitive inquiry," and we afford "great deference" to the district court's decision. *United States v. Coats*, 8 F.4th 1228, 1262 (11th Cir. 2021) (citation modified).

Here, the district court did not clearly err when it refused to grant Sims a downward adjustment for acceptance of responsibility. It was permitted to consider that he continued to engage in criminal conduct after pleading guilty when he possessed a cellphone while incarcerated. Even though this conduct was unrelated to the offense of conviction in this case, the court could rely on it to deny credit for acceptance of responsibility. *See Pace*, 17 F.3d at 343 (rejecting defendant's argument that district court erred in denying him a downward adjustment for acceptance of responsibility based on his marijuana use because the drug use was "unrelated to his offense of conviction").

## C.

Sims also challenges his 96-month sentence as substantively unreasonable.[3] We will vacate a sentence as substantively

---

[3] In addition, Sims argues that his sentence is procedurally unreasonable "because the district court failed to properly apply the acceptance of responsibility provision in calculating [his] sentence." Appellant's Br. 38. But as we explained

unreasonable "only if[] we are left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *United States v. Irey*, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (citation modified). Importantly, "the weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court." *United States v. Croteau*, 819 F.3d 1293, 1310 (11th Cir. 2016). In addition, although there is no presumption of reasonableness, "we ordinarily expect that a sentence falling within the guideline range will be reasonable, and a sentence imposed well below the statutory maximum penalty indicates reasonableness." *United States v. Woodson*, 30 F.4th 1295, 1308 (11th Cir. 2022) (citation modified). The party challenging the sentence bears the burden of showing that it is substantively unreasonable. *United States v. Boone*, 97 F.4th 1331, 1338–39 (11th Cir. 2024).

Sims argues that his sentence was unreasonable and should have been shorter because this was a "run-of-the mill possession of firearm case with no additional aggravators." Appellant's Br. 39 (citation modified). We conclude that the district court had discretion to weigh the § 3553(a) factors as it did and impose a sentence at the top of the applicable guidelines range. In this case, Sims unlawfully possessed a firearm after sustaining three previous convictions

---

in Part III.B. above, the district court did not clearly err when it refused to apply a downward adjustment for acceptance of responsibility. We thus conclude that there was no procedural error here.

arising out of offenses when he used a firearm to commit a felony. And he obtained the firearm that he possessed in this case just a few months after completing lengthy state custodial sentences. In addition, Sims's sentence was within the applicable advisory guidelines range and well below the statutory maximum of 15 years that he faced, which further supports the conclusion that the sentence was reasonable. *See Woodson*, 30 F.4th at 1308. Given the record in this case, we are not left with a definite and firm conviction that the district court committed a clear error of judgment when it imposed a 96-month sentence. We thus reject his challenge to the substantive reasonableness of his sentence.

**AFFIRMED.**