**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-13951

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

CHRISTIAN ISAIAH CARTER,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 3:24-cr-00046-TKW-1

————————————

Before NEWSOM, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

Christian Isaiah Carter appeals his 78-month sentence for possession of a firearm and ammunition by a convicted felon 18 U.S.C. §§ 922(g)(1) & 924(a)(8). On appeal, Carter makes two arguments. He first contends the district court erred in classifying

one of his prior convictions, for aggravated assault under Georgia law, as a "crime of violence" under the Sentencing Guidelines. He acknowledges that our court, in *United States v. Hicks*, 100 F.4th 1295 (11th Cir. 2024), already has ruled that a Georgia conviction for aggravated assault is a "crime of violence" for purposes of the Guidelines. However, in his view, aggravated assault in Georgia includes ordinary recklessness whereas generic aggravated assault under federal law is narrower than the state crime. Therefore, he asserts, *Hicks* should not apply because we have not decided the necessary *mens rea* for the purposes of the Guidelines. Second, he argues the district court abused its discretion and imposed a substantively unreasonable sentence. After careful review, we affirm.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

The facts of Carter's case began when police were called to recover a stolen vehicle in April 2024. The stolen vehicle was driving through Escambia County, Florida, and, once police arrived, it ignored police emergency lights, fleeing at a high rate of speed through a red light. Ultimately, the vehicle struck a stop sign and Carter exited the vehicle and fled on foot. Police chased and seized Carter—who was bit by a K-9 officer—and began handcuffing him. As police did so, they discovered that Carter was carrying a 9-milimeter firearm loaded with 15 rounds of ammunition. The firearm and the ammunition had each been transported in interstate or foreign commerce before Carter's possession of them. Carter was charged with violating 18 U.S.C. §§ 922(g)(1) & 924(a)(8) and pled guilty pursuant to a written plea agreement.

A probation officer prepared a presentence investigation report ("PSI"), which calculated a guidelines range of 63 to 78 months' imprisonment. In doing so, the PSI enhanced the guidelines range because Carter had a prior conviction for aggravated assault under Georgia law which, the PSI explained, counted as a "crime of violence" under U.S.S.G. §§ 2K2.1(a)(2) & 4B1.2. The PSI also noted that the statutory maximum sentence was 15 years' imprisonment. As part of its calculations, the PSI noted that Carter previously was convicted of several crimes, including petit theft, grand theft auto, fleeing/eluding law enforcement, reckless driving, leaving the scene of an accident, unarmed burglary of an unoccupied conveyance, battery, grand theft auto, criminal mischief, possession of a weapon or ammunition by a convicted felon, dealing in stolen property, *aggravated assault*, terroristic threats and acts, and criminal trespass. The PSI also described Carter's upbringing and personal history, which included the fact that he had suffered from depression and post-traumatic stress disorders, as well as polysubstance use.

The PSI identified several mitigating and aggravating factors that might warrant consideration for sentencing. As for mitigating factors, it noted that Carter had a strong support system, including numerous family members willing and able to assist him after his release. It also stated that Carter had the means to obtain meaningful employment, as shown by his employment history, and had expressed the desire to change his behavior and avoid future crimes. As for aggravating factors, the PSI noted that Carter's criminal history was "significant" and that he had fled from law

enforcement at a high rate of speed and "nearly struck other vehicles and went airborne at various locations" during the chase.

Carter objected to the PSI, arguing that aggravated assault under Georgia law was broader than generic aggravated assault and thus not a crime of violence under the Guidelines. He conceded, however, that the district court was bound by this Court's precedent, which foreclosed his overarching argument. At sentencing, the district court overruled Carter's objection to the Guidelines calculations, concluding that it was bound by precedent in ruling that Carter's conviction for aggravated assault in Georgia is a crime of violence under the Guidelines. It then adopted the PSI and asked the parties for their arguments about what a reasonable sentence would be.

Carter began by giving an allocution and apologizing for his behavior. He explained that he had taken the time to reflect on his behavior and found religion, and he expressed that he planned to complete his education and work toward creating a business that he could run once he was released. The government did not argue for a specific sentence, but noted that there were aggravating circumstances, including the police chase and Carter's prior convictions. The government asked the court to impose a sentence that would give Carter an opportunity to receive mental health and substance abuse treatment, and it noted that Carter had pending charges in state court, so it recommended the district court order the sentences to run concurrently.

Carter, through his attorney, argued for a low-end guide-lines sentence. He maintained that he had been suffering from "long-term substance abuse issues" and "long-term mental health issue[s]," which had precipitated the offense conduct here. More-over, he contended that he was optimistic because he would have a chance to receive drug treatment and mental health treatment that would help him turn his life around. Finally, he noted that his Guidelines range had been nearly doubled by the court's ruling that aggravated assault was a crime of violence and urged the court to consider that fact in choosing the appropriate sentence.

The district court then explained its sentencing decision, noting that, under 18 U.S.C. § 3553(a), it "need[ed] to come up with a sentence that is not too harsh, but not too lenient." It determined that, while it was sentencing Carter for possession of a firearm by a convicted felon, the "things that went on outside of that posses-sion" made the crime "more serious." Specifically, Carter's con-duct and the high-speed chase he was part of had put many peo-ple—including himself, law enforcement, and other citizens—at risk, which made the crime more serious than simple possession of a firearm. As for mitigating factors, the court noted that Carter had suffered from mental health and substance abuse issues. It also noted that Carter's mother and family seemed supportive and wanted him to turn his life around.

On the other hand, the court noted that there were "a lot of aggravating circumstances" in Carter's history, as he had "been en-gaged in making poor decisions for most of [his] life." It noted that

there were multiple theft offenses, fleeing offenses, and violent of-fenses as well.  The court then explained that this criminal history:

> creates some concern in my mind that, for one reason or another, that's just how you're wired and absent some sort of significant punishment, this is going to continue over and over and over again.  And that's troubling.  You know, the fact that you've served fairly substantial prison terms [in the past]—44 months, 54 months, 48 months—yet that was not enough to dis-suade you from continuing to engage in criminal ac-tivity is another thing that's very concerning to me because it again raises the issue of what punishment is going to be enough until your behavior changes.

The court also noted that Carter had committed this crime while on a term of supervision, which was aggravating as well.  It explained that, given these concerns, an appropriate sentence would need "to protect the public" from more crimes and it would need "to be serious—substantial enough that" Carter has "gotten the message."  It explained that it thought a sentence longer than Carter had received in the past was "necessary" for Carter to "get the message."

The court, for these reasons, imposed a sentence of 78 months' imprisonment.  It reiterated that it had taken into ac-count the guidelines range, which it believed was appropriately cal-culated, as well as the mitigating and aggravating facts present in the case.  The court also sentenced Carter to three years of super-vised release to follow the term of imprisonment.  It ruled that

Carter's federal sentence was to run concurrent with any state term of imprisonment imposed by Florida for conduct arising out of the same circumstances. The court later entered a written judgment to this effect. It also prepared a "statement of reasons" which included Carter's "history of mental health and substance abuse addiction" as mitigating factors. The court further considered Carter's "extensive criminal history" and overall recidivism as aggravating factors, as well as the fact that Carter committed the instant offense while on probation. Carter appealed.

## II. STANDARD OF REVIEW

We follow a "two-step process" when reviewing a sentence. *United States v. Trailer*, 827 F.3d 933, 935 (11th Cir. 2016). First, we review the sentence for procedural reasonableness, determining "whether the district court committed any significant procedural error, such as miscalculating the advisory guideline range . . . , failing to consider the 18 U.S.C. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence." *Id.* at 936. We review *de novo* the proper interpretation and application of the Sentencing Guidelines and this *de novo* review also includes the question of whether a prior conviction qualifies as a "crime of violence" under the Guidelines' definition of that term. *United States v. Pulido*, 133 F.4th 1256, 1279 n.20 (11th Cir. 2025); *United States v. Hicks*, 100 F.4th 1295, 1297 (11th Cir. 2024).

In the second step of our "two-step process," we determine "whether the sentence is substantively reasonable in light of the

totality of the circumstances and the § 3553(a) factors." *Trailer*, 827 F.3d at 935–36. "We review the substantive reasonableness of a sentence for an abuse of discretion." *United States v. Butler*, 39 F.4th 1349, 1354–55 (11th Cir. 2022). "In reviewing the [substantive] reasonableness of a sentence, we will not substitute our own judgment for that of the sentencing court and we will affirm a sentence so long as the court's decision was 'in the ballpark of permissible outcomes.'" *Id.* at 1355 (quoting *United States v. Rosales-Bruno*, 789 F.3d 1249, 1257 (11th Cir. 2015) (Opinion of E. Carnes, J.)). A party arguing a sentence is unreasonable bears "the burden of establishing the sentence is unreasonable in light of the record and the § 3553(a) factors." *United States v. Gonzalez*, 550 F.3d 1319, 1324 (11th Cir. 2008). "[W]e have identified three ways in which a district court can abuse its discretion" and "impos[e] a substantively unreasonable sentence: (1) failing to properly consider a relevant sentencing factor that was due significant weight, (2) giving significant weight to a factor that was not relevant, or (3) committing a clear error of judgment by weighing the sentencing factors unreasonably." *Butler*, 39 F.4th at 1356; *see also United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*).

## III. DISCUSSION

### A. *Carter has not shown procedural error in his sentence.*

As noted above, Carter's first argument on appeal is that aggravated assault under Georgia law is broader than the federal law of generic aggravated assault, thus rendering an increase in his sentence based on that prior crime improper. He makes several

distinct contentions on this point—primarily about the *mens rea* necessary for Georgia aggravated assault as compared to generic aggravated assault. He maintains that, because neither *Hicks* nor its precursor cases addressed the necessary *mens rea* for federal generic aggravated assault, the state law is broader and should not have counted as a crime of violence when calculating his sentence.

Given our precedent, the district court did not err by finding Carter's prior conviction for aggravated assault qualified as a "crime of violence" under U.S.S.G. § 4B1.2(a)(2) for purposes of § 2K2.1(a)(2). *Hicks*, 100 F.4th at 1297. In *United States v. Morales-Alonso*, we held that "the elements of aggravated assault [under Georgia law] are substantially the same as the elements of generic aggravated assault," meaning that the defendant's aggravated assault conviction satisfied the Guidelines' definition of a "crime[] of violence." 878 F.3d 1311, 1316–20 (11th Cir. 2018). While we did not explicitly address the question of *mens rea* in *Morales-Alonso*, we subsequently did so in *Hicks*. There, a defendant argued that his two prior Georgia convictions for aggravated assault with a deadly weapon did not qualify as "crimes of violence" under §§ 2K2.1(a)(2) & 4B1.2(a)(2) because the *mens rea* requirement of that crime under Georgia law rendered it categorically broader than the generic federal offense, as the term is used in the Guidelines. 100 F.4th at 1298–99. We rejected that argument and affirmed, holding that *Morales-Alonso* foreclosed the defendant's argument. *Id.* at 1299–1301.

Like the defendant in *Hicks*, Carter is arguing that his prior conviction does not qualify as a "crime of violence" under § 4B1.2(a)(2) because of the state statute's *mens rea* requirement. *Id.* at 1299. Accordingly, the district court was bound to conclude, as we did in *Hicks*, that the Georgia crime of aggravated assault is a "crime of violence." Therefore, we affirm on this issue.

### B. Carter has not shown his sentence is substantively unreasonable.

Carter's second argument is that his sentence is substantively unreasonable.[1] He raises several distinct points on this front, all of which are unavailing.

Under § 3553(a), a district court must impose a sentence "sufficient, but not greater than necessary," to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence, and to protect the public from future crimes of the defendant. 18 U.S.C. § 3553(a). In addition, the court must consider, among other factors, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentence disparities among similarly situated defendants. *Id.*

Though the district court must consider all relevant § 3553(a) factors, "the weight given to each factor is committed to

---

[1] As part of this argument, Carter argues that the district court started from an incorrect guidelines range, relying on his procedural argument. Because we have already rejected that argument, we need not revisit the issue.

24-13951              Opinion of the Court                11

the sound discretion of the district court," and it may attach great weight to one factor over the others. *Butler*, 39 F.4th at 1355. A court's "failure to discuss . . . 'mitigating' evidence" does not indicate that the court "erroneously 'ignored' or failed to consider th[e] evidence in determining [the defendant's] sentence." *United States v. Amedeo*, 487 F.3d 823, 833 (11th Cir. 2007). Instead, a "court's acknowledgment that it has considered the §3553(a) factors and the parties' arguments" is typically sufficient to show it has considered the issues and arguments before it. *Butler*, 39 F.4th at 1355 (citing *United States v. Sarras*, 575 F.3d 1191, 1219 (11th Cir. 2009)); *cf. United States v. Wetherald*, 636 F.3d 1315, 1323 (11th Cir. 2011) ("The district court is not required to utter a set of magic words . . . .").

A court may base its factual findings at sentencing on facts admitted in the defendant's guilty plea, undisputed statements in the PSI, or evidence presented at the sentencing hearing, and from reasonable inferences from these sources. *United States v. Matthews*, 3 F.4th 1286, 1289 (11th Cir. 2021); *United States v. Philidor*, 717 F.3d 883, 885 (11th Cir. 2013). However, "[t]here is no requirement that sentencing judges confine their consideration to empirical [evidence] and ignore what they have learned from similar cases over the years." *United States v. Brenes-Colon*, 136 F.4th 1343, 1346 (11th Cir. 2025) (quoting *United States v. Shaw*, 560 F.3d 1230, 1237 (11th Cir. 2009)). "The seriousness of an offense, its incidence in the community, and the potential seriousness of additional offenses commonly derive from a sentencing court's own experience and common sense." *Id.*

12                    Opinion of the Court                    24-13951

In assessing the reasonableness of a sentence, we "ordinarily expect a sentence within the Guidelines range to be reasonable." *Gonzalez*, 550 F.3d at 1324; *see also United States v. Castaneda*, 997 F.3d 1318, 1332 (11th Cir. 2021).  For similar reasons, a sentence imposed "well below" the statutory maximum also can indicate reasonableness.  *Gonzalez*, 550 F.3d at 1324; *see also United States v. Dougherty,* 754 F.3d 1353, 1362 (11th Cir. 2014).

Carter first argues that the district court abused its discretion by "giving significant weight to a factor that was not relevant . . . ." *Butler*, 39 F.4th at 1356.[2]  Noting that we have found that a sentence based on erroneous information or assumptions that are unsupportable can violate due process,[3] Carter argues that this error occurred when "the district court relied on its belief that prison sentences deter crime and that *longer* sentences produce *more*

---

[2] While Carter frames his challenge as relating to substantive reasonableness, it is possible, as the government notes, that this argument could be characterized as a procedural reasonableness challenge.  *See United States v. Curtin*, 78 F.4th 1299, 1314–26 (11th Cir. 2023) (Newsom, J., concurring) (noting that our precedent has not always been consistent in its categorization of procedural and substantive reasonableness challenges).  In any event, we have considered the argument at each step of our reasonableness review and find no reversible error.  *See Trailer*, 827 F.3d at 935.  That said, to the extent that Carter's brief raises a standalone due process claim, no such claim was presented in the district court, so our review is only for plain error.  *See United States v. Utsick*, 45 F.4th 1325, 1332 (11th Cir. 2022) (laying out the elements of plain-error review).

[3] *See United States v. Darby*, 744 F.2d 1508, 1532 (11th Cir. 1984); *United States v. Tobias*, 662 F.2d 381, 388 (5th Cir. Unit B 1981).

deterrence." However, the record does not reflect that the district court focused on an improper factor.

In the relevant portion of the transcript, the district court expressed its concern with factors within § 3553(a), which are clearly relevant to its sentencing determination. *See* 18 U.S.C. § 3553(a). For instance, the court focused on whether past prison terms had been "enough to dissuade" Carter from committing further criminal activity. These comments were directly responsive to Congress's instruction that sentencing courts must consider whether a sentence "afford[s] adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(B). While Carter argues why deterrence should—or perhaps could—be weighed differently by a sentencing court, "the weight given to each factor is committed to the sound discretion of the district court," and it may attach weight to one factor over the others. *Butler*, 39 F.4th at 1355. That is what the court did here. Moreover, the court's comments reflect its view, rationally based on its own experience, that a longer sentence here was necessary to afford deterrence to Carter specifically. We have permitted district courts to reasonably rely on their own "experience, common sense, and good judgment" in crafting its sentence, *Brenes-Colon*, 136 F.4th at 1346, so the district court's comments on this issue did not amount to "giving significant weight to a factor that was not relevant," *Butler*, 39 F.4th at 1356.

Carter also argues that the district court "gave insufficient weight to [his] compelling mitigation evidence." Yet, the district court does not "erroneously 'ignore[]' or fail[] to consider"

mitigation evidence by failing to discuss it explicitly. *Amedeo*, 487 F.3d at 833; *see also Wetherald*, 636 F.3d at 1323. In any event, the district court did explicitly discuss much of the mitigation evidence Carter cites on appeal during the sentencing hearing. To the extent that it was unclear, the district court's statement of reasons further clarifies that it had reviewed and factored that mitigation evidence into its sentence. *See Butler*, 39 F.4th at 1355.

Finally, Carter's sentence was within the Guidelines range and we "ordinarily expect a sentence within the Guidelines range to be reasonable." *Gonzalez*, 550 F.3d at 1324. It was also "well below" the statutory maximum, which also suggests that the district court did not abuse its broad discretion. *See id.*; *Dougherty*, 754 F.3d at 1362. At bottom, our review of the substantive reasonableness of sentences is deferential, and Carter has not shown that the district court abused its broad discretion or imposed a sentence outside the ballpark of permissible and reasonable sentences. *Butler*, 39 F.4th at 1355; *Rosales-Bruno*, 789 F.3d at 1257; *Gonzalez*, 550 F.3d at 1324. Accordingly, we affirm on this issue as well.

★★★

For these reasons, we affirm Carter's sentence.

**AFFIRMED.**

24-13951                 ABUDU, J., Concurring                 1

ABUDU, Circuit Judge, Concurring:

I concur in the majority opinion because, under our deferential standard of review, Christian Carter has not shown his sentence is substantively unreasonable.  *See United States v. Butler*, 39 F.4th 1349, 1354–55 (11th Cir. 2022) ("We review the substantive reasonableness of a sentence for an abuse of discretion."); *see also United States v. Beaufils*, 160 F.4th 1147, 1163 (11th Cir. 2025) ("This standard allows for a 'range of choice for the district court,' as long as that choice is not a 'clear error of judgment.'" (quoting *Rasbury v. IRS (In re Rasbury)*, 24 F.3d 159, 168 (11th Cir. 1994))). However, Carter's substantive reasonableness argument, while insufficient to establish reversible error on appeal, is not wholly without merit.

Carter cites a report from the Department of Justice which summarizes research showing that "[i]ncreasing the severity of punishment does little to deter crime."  *See* Appellant's Brief at 27.[1] In fact, according to this body of research, the certainty of punishment, rather than its length, is much more important in deterring

---

[1] NATIONAL INST. OF JUSTICE, U.S. DEP'T OF JUSTICE, Five Things About Deterrence (2016), https://nij.ojp.gov/topics/articles/five-things-about-deterrence [https://perma.cc/V65H-QS7N].  This report relies on, and is consistent with, other literature on the topic.  *See, e.g.,* Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 CRIME & J. AM. 199, 199–254 (2013); *see also* Marc Mauer, *Long Term Sentences: Time to Reconsider the Scale of Punishment*, 87 UMKC L. REV. 113, 121–25 (2018) (arguing that "long sentences are counterproductive for public safety"); *cf. also United States v. Craig*, 703 F.3d 1001, 1004 (7th Cir. 2012) (Posner, J., concurring) ("Sentencing judges should try to be realistic about the *incremental* deterrent effect of extremely long sentences. (emphasis in original)).

2                    ABUDU, J., Concurring                    24-13951

crime.[2]  The fact that longer sentences are not particularly effective at deterring future crime can be highly relevant in formulating a sentence "sufficient, but not greater than necessary" to accomplish deterrence goals that Congress has instructed courts to consider. *See* 18 U.S.C. § 3553(a)(2)(B), (C).    Accordingly, we and lower courts should more carefully analyze this body of research to ensure that the sentences meted out actually advance the public interest by lessening criminal behavior and reducing recidivism.  *See, e.g., Gall v. United States*, 552 U.S. 38, 59 (2007) (reversing Eighth Circuit, which had rejected district court's reasonable finding that "imprisonment was not necessary to deter [the defendant] from engaging in future criminal conduct or to protect the public from future . . . criminal acts").   Given the decades of "tough on crime" laws which have neither stopped the revolving door of recidivism for some criminal defendants nor made the public appreciably safer, the current regime clearly is not working well enough.

---

[2] *See* VERA INST. OF JUSTICE, A NEW PARADIGM FOR SENTENCING IN THE UNITED STATES 23 (Feb. 2023), https://www.vera.org/publications/a-new-paradigm-for-sentencing-in-the-united-states [https://perma.cc/4T5z-TZGV] (concluding that "severe sentences do not deter crime").